## POPE *v.* UNITED STATES.

No. 26.   Argued October 16, 1944.—Decided November 6, 1944.

2

*Mr. George R. Shields,* with whom *Mr. Herman J. Galloway* was on the brief, for petitioner. *Allen Pope, pro se,* filed a supplemental brief.

*Assistant Attorney General Shea,* with whom *Solicitor General Fahy, Messrs. Robert L. Stern, Joseph B. Goldman,* and *Miss Cecelia H. Goetz* were on the brief, for the United States.

*Mr. John W. Cragun,* as *amicus curiae,* filed a brief urging reversal.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question for decision is whether Congress exceeded its constitutional authority in enacting the Special Act of February 27, 1942, 56 Stat. 1122,[1] by which, "not-

---

[1] *"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That jurisdiction be, and the same is hereby, conferred upon the Court of Claims of the United States, notwithstanding any prior determination, any statute of limitations, release, or prior acceptance of partial allowance, to hear, determine, and render judgment upon the claims of Allen Pope, his heirs or personal representatives, against the United States, as described and in the manner set out in section 2 hereof, which claims arise out of the construction by him of a tunnel for the second high service of the water supply in the District of Columbia.

"Sec. 2. The Court of Claims is hereby directed to determine and render judgment at contract rates upon the claims of the said Allen Pope, his heirs or personal representatives, for certain work performed for which he has not been paid, but of which the Government has received the use and benefit; namely, for the excavation and concrete work found by the court to have been performed by the said Pope in complying with certain orders of the contracting officer, whereby the plans for the work were so changed as to lower the upper 'B' or 'pay' line three inches, and as to omit the timber lagging from the side walls of the tunnel; and for the work of excavating materials which caved in over the tunnel arch and for filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method as described by the court and based on the volume of grout actually used, and the amount of grout to be as determined by the

withstanding any prior determination" or "any statute of limitations," it purported to confer jurisdiction on the Court of Claims to "hear and determine," and directed it to "render judgment" upon, certain claims of petitioner against the Government in conformity to directions given in the Act.

Petitioner brought the present proceeding in the Court of Claims to recover upon his claims as specified and sanctioned by the Special Act. The court dismissed the proceeding on the ground that the Act was unconstitutional. 100 Ct. Cls. 375. It thought that in requiring the court to make a mathematical calculation of the amount of petitioner's claims upon the basis of data enumerated in the Act and to give judgment for the amount so ascertained, notwithstanding the rejection of those claims in an earlier suit in the Court of Claims, the Act was an unconstitutional encroachment by Congress upon the judicial function of the court. Holding that it was free to ignore the Congressional command because given without constitutional authority, the court gave judgment dismissing the proceeding.

The case comes here on petition for certiorari which assigns as error the ruling below that the Congressional mandate was without constitutional authority. Because of the importance of the questions involved we issued the

court's previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing.

"Sec. 3. Any suit brought under the provisions of this Act shall be instituted within one year from the date of the approval hereof, and the court shall consider as evidence in such suit any or all evidence heretofore taken by either party in the case of Allen Pope against the United States, numbered K–366, in the Court of Claims, together with any additional evidence which may be taken.

"Sec. 4. From any decision or judgment rendered in any suit presented under the authority of this Act, a writ of certiorari to the Supreme Court of the United States may be applied for by either party thereto, as is provided by law in other cases."

writ, 321 U. S. 761. For reasons which will presently appear, we hold that we have jurisdiction to review the judgment below.

Several years before the enactment of the Special Act, petitioner brought suit in the Court of Claims to recover amounts alleged to be due upon his contract with the Government for the construction of a tunnel as a part of the water system of the District of Columbia. The construction involved certain excavation and certain filling of the excavated space, in part with concrete and in part with dry packing and grout. Dry packing consists of closely packed broken rock, into which is pumped the grout, a thin liquid mixture of sand, cement and water, which, when it hardens, serves to solidify and strengthen the dry packing.

Included in the demands for which the suit was brought were certain claims which are now asserted in this proceeding. They comprise a claim for additional excavation and concrete work alleged to have been required because of certain orders of the contracting officer, and a claim for dry packing and grout furnished by petitioner and placed by him in certain excavated space outside the so-called "B" line shown on the contract drawings. The "B" line marked the outer limits of the tunnel beyond which, by the terms of the contract, petitioner was not to be paid for excavation.

In the first suit it appeared that petitioner sought recovery for excavation, for which he had not been paid, of the space at the top of the tunnel where the contracting officer had lowered the "B" line by three inches, thus decreasing the space for the excavation for which the contract authorized payment to be made. The Court of Claims denied recovery of this item. The contracting officer had also directed the omission of certain timber supports or lagging required by the contract to be placed on the side walls of certain sections of the tunnel. Cave-ins from the sides resulted, making it necessary that the caved-in

material be removed and that the resulting space be filled with concrete, all at increased expense to petitioner. The Court of Claims made findings showing the amount of the additional excavation and concrete work claimed, but denied recovery on these items because the order of the contracting officer for the additional work involved a change in the contract which was not in writing as the contract required.

The Court of Claims also denied petitioner's claim for dry packing and grout. It was of opinion that the Government had received the benefit of and was liable for whatever dry packing petitioner had done and for so much of the grout as had actually found its way into the dry packed space and had remained there. But it denied recovery because of deficiency in the proof as to the extent of this space. The only proof offered was the "liquid method" of computation, based on the number of bags of cement used in the preparation of all the grout furnished by petitioner, the cement constituting a fixed proportion of the grout. The court held, with the Government, that the seepage of the grout into areas outside that dry packed rendered the liquid method an unreliable measure for determining either the volume of the dry packing or the amount of the grout required for it. The court gave judgment accordingly, while allowing to petitioner other claims upon his contract with which we are not here concerned. Petitioner's motions for a new trial were denied by the Court of Claims, and this Court denied certiorari. 303 U. S. 654.

The Special Act of Congress directed the Court of Claims to "render judgment at contract rates upon the claims" of petitioner for "certain work performed for which he has not been paid, but of which the Government has received the use and benefit," and gave jurisdiction to this Court to review the judgment by certiorari. Section 2 of the Act defined the work to be compensated as "the excavation and concrete work found by the court to

have been performed by the said Pope in complying with certain orders of the contracting officer, whereby the plans for the work were so changed as to lower the upper 'B' or 'pay' line three inches, and as to omit the timber lagging from the side walls of the tunnel; and for the work of excavating materials which caved in over the tunnel arch and for filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method as described by the court and based on the volume of grout actually used, and the amount of grout to be as determined by the court's previous findings based on the number of bags of cement used in the grout actually pumped into dry packing."

The Act further directed that the court should consider as evidence in the case "any or all of the evidence" taken by either party in the earlier suit, "together with any additional evidence which may be taken."

The Court of Claims in construing the Special Act said (100 Ct. Cls. p. 379):

"A rereading of Section 2 of the act will show that the task which the court is directed to perform is a small and unimportant one. It is directed to refer to its previous findings, take certain cubic measurements and certain numbers of bags of cement which are recited there by reference, multiply those figures by the several unit prices stipulated in the contract for the several kinds of work, add the results and render judgment for the plaintiff for the sum. If this reading of Section 2 is correct, not only does the special act purport to confer upon the plaintiff the unusual privilege of litigating the same case a second time in a court which once finally decided it, and applying a second time for a review in the Supreme Court of the United States, which once considered and denied such a review. The special act also purports to decide the ques-

tions of law which were in the case upon its former trial and would, but for the act, be in it now, and to decide all questions of fact except certain simple computations." So construed it thought the Special Act directed the Court of Claims to decide again the case or controversy which it had decided in the first suit, "to decide it for the plaintiff and give him a judgment for an amount" determined by a "simple computation, based upon data referred to in the Special Act." This, it concluded, Congress could not "effectively direct."

For this conclusion it relied upon *United States* v. *Klein,* 13 Wall. 128, in which this Court ruled that Congress was without constitutional power to prescribe a rule of decision for a case pending on appeal in this Court so as to require it to order dismissal of the suit in which the Court of Claims had given judgment for the claimant. Decision was rested upon the ground that the judicial power over the pending appeal resided with this Court in the exercise of its appellate jurisdiction, and that Congress was without constitutional authority to control the exercise of its judicial power and that of the court below by requiring this Court to set aside the judgment of the Court of Claims by dismissing the suit.

As the opinion in the *Klein* case pointed out, pp. 144, 145, the Act of March 17, 1866, 14 Stat. 9, conferred on the Court of Claims judicial power by giving it authority to render final judgments in those cases and controversies which, pursuant to existing statutes, had been previously litigated before it. By later statutes this authority was extended to future cases, and the Court has since exercised the judicial power thus conferred upon it. See *Ex parte Bakelite Corp.,* 279 U. S. 438, 454; *United States* v. *Jones,* 119 U. S. 477. We do not consider just what application the principles announced in the *Klein* case could rightly be given to a case in which Congress sought, *pendente lite,* to set aside a judgment of the Court of Claims in favor

of the Government and to require relitigation of the suit. For we do not construe the Special Act as requiring the Court of Claims to set aside the judgment in a case already decided or as changing the rules of decision for the determination of a pending case.

Before the Special Act the claims of petitioner on his contract with the Government had been passed upon judicially and merged in a judgment which was final. *United States* v. *Jones, supra; In re Sanborn,* 148 U. S. 222, 225; *Luckenbach S. S. Co.* v. *United States,* 272 U. S. 533, 536 *et seq.* This Court denied certiorari, and the judgment, which remains undisturbed by any subsequent legislative or judicial action, conclusively established that petitioner was not entitled to recover on his claims. The Special Act did not purport to set aside the judgment or to require a new trial of the issues as to the validity of the claims which the Court had resolved against petitioner. While inartistically drawn the Act's purpose and effect seem rather to have been to create a new obligation of the Government to pay petitioner's claims where no obligation existed before. And such being its effect, the Act's impact upon the performance by the Court of Claims of its judicial duties seems not to be any different than it would have been if petitioner's claims had not been previously adjudicated there.

We perceive no constitutional obstacle to Congress' imposing on the Government a new obligation where there had been none before, for work performed by petitioner which was beneficial to the Government and for which Congress thought he had not been adequately compensated. The power of Congress to provide for the payment of debts, conferred by § 8 of Article I of the Constitution, is not restricted to payment of those obligations which are legally binding on the Government. It extends to the creation of such obligations in recognition of claims which are merely moral or honorary. *Roberts* v. *United*

*States,* 92 U. S. 41; *United States* v. *Realty Co.,* 163 U. S. 427; *United States* v. *Cook,* 257 U. S. 523; *Cincinnati Soap Co.* v. *United States,* 301 U. S. 308, 314. Congress, by the creation of a legal, in recognition of a moral, obligation to pay petitioner's claims plainly did not encroach upon the judicial function which the Court of Claims had previously exercised in adjudicating that the obligation was not legal.[2] Nor do we think it did so by directing that court to pass upon petitioner's claims in conformity to the particular rule of liability prescribed by the Special Act and to give judgment accordingly. *Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 18 How. 421; *Roberts* v. *United States, supra;* see *Cherokee Nation* v. *United States,* 270 U. S. 476, 486; cf. *Klamath Indians* v. *United States,* 296 U. S. 244; *United States* v. *Klamath Indians,* 304 U. S. 119.

Congress having exercised its constitutional authority to impose on the Government a legally binding obligation, the decisive question is whether it invaded the judicial province of the Court of Claims by directing it to determine the extent of the obligation by reference, as directed, to the specified facts, and to give judgment for that amount. In answering, it is important that the Act contemplated that petitioner should bring suit on his claims in the usual manner, that the court was given jurisdiction to decide it, and that petitioner by bringing the suit has invoked, for its decision, whatever judicial power the court possesses. Cf. *United States* v. *Realty Co., supra.* In this posture of the case it is pertinent to inquire what, if any-

---

[2] The Court of Claims has often so held in earlier cases. See e. g. *Nock* v. *United States,* 1 Ct. Cls. 71, 2 Ct. Cls. 451; *Murphy* v. *United States,* 14 Ct. Cls. 508, 15 Ct. Cls. 217, affirmed 104 U. S. 464, 35 Ct. Cls. 494; *Alcock & Co.* v. *United States,* 61 Ct. Cls. 312, 74 Ct. Cls. 308; *DeLuca* v. *United States,* 69 Ct. Cls. 262, cert. denied 283 U. S. 862, 84 Ct. Cls. 217. And see *Menominee Indians* v. *United States,* 101 Ct. Cls. 10.

thing, Congress added to or subtracted from the judicial duties of the Court of Claims by directing that it consider the case and give judgment for the amount found to be due. Stripped of all complexities of detail the case is one in which, simply stated, petitioner has sought to enforce the obligation, which the Government has assumed, to pay him for work done and not paid for. Congress has in effect consented to judgment in an amount to be ascertained by reference to the specified data.

When a plaintiff brings suit to enforce a legal obligation it is not any the less a case or controversy upon which a court possessing the federal judicial power may rightly give judgment, because the plaintiff's claim is uncontested or incontestable. Nor is it any the less so because the amount recoverable depends upon a mathematical computation based upon data to be ascertained which by the terms of the obligation are its measure. For in any case the court is called on to sanction, by its judgment, an alleged obligation in a proceeding in which the existence, validity and extent of the obligation, the existence of the data, and the correctness of the computation may be put in issue.

The court below seems to have assumed that its only function under the Special Act was to make a calculation based upon data to be found in the Act and in the findings of the earlier suit. In view of the provisions of the Special Act for taking evidence and for considering the evidence in the first suit, we cannot say that all the earlier findings are to be deemed conclusive and that the court could not have been called on in this proceeding to determine judicially whether they are so. Whether the Act makes them conclusive, and if not, whether the evidence would establish the facts on which the Act predicates liability, are judicial questions. But if the facts be ascertained by proof or by stipulation, it is still a part of the judicial function to determine whether there is a legally binding obligation

and, if so, to give judgment for the amount due even though the amount depends upon mere computation.

It is a judicial function and an exercise of the judicial power to render judgment on consent. A judgment upon consent is "a judicial act." *United States* v. *Swift & Co.*, 286 U. S. 106, 115; *Swift & Co.* v. *United States*, 276 U. S. 311, 324; see also *Pacific R. Co.* v. *Ketchum*, 101 U. S. 289; *United States* v. *Babbitt*, 104 U. S. 767; *Nashville, C. & St. L. R. Co.* v. *United States*, 113 U. S. 261; *Thompson* v. *Maxwell Land Grant & R. Co.*, 168 U. S. 451. It is likewise a judicial act to give judgment on a legal obligation which the court finds to be established by stipulated facts; *J. I. Case Co.* v. *Labor Board*, 321 U. S. 332, 333; *Johnson* v. *Yellow Cab Co.*, 321 U. S. 383, 388; *Equitable Society* v. *Commissioner*, 321 U. S. 560, 561; or when the defendant is in default. *Voorhees* v. *Bank of the United States*, 10 Pet. 449; *Randolph* v. *Barrett*, 16 Pet. 138; *Clements* v. *Berry*, 11 How. 398; *Cooper* v. *Reynolds*, 10 Wall. 308; *Rio Grande Irrigation Co.* v. *Gildersleeve*, 174 U. S. 603; *Fidelity & Deposit Co.* v. *United States*, 187 U. S. 315; *Christianson* v. *King County*, 239 U. S. 356, 372. It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly. *Renner & Bussard* v. *Marshall*, 1 Wheat. 215; *Aurora City* v. *West*, 7 Wall. 82, 104; *Clements* v. *Berry, supra;* cf. *Mayhew* v. *Thatcher*, 6 Wheat. 129. In all these cases the court determines that the unchallenged facts shown of record establish a legally binding obligation; it adjudicates the plaintiff's right of recovery and the extent of it, both of which are essential elements of the judgment.

We conclude that the effect of the Special Act was to authorize petitioner to invoke the judicial power of the Court of Claims, and that he has done so. It is true that

Congress has imposed on that court, as it has on the courts of the District of Columbia, non-judicial duties of an administrative or legislative character. See *In re Sanborn, supra; Federal Radio Comm'n* v. *Nelson Bros. Co.,* 289 U. S. 266, 275. Those imposed on the Court of Claims are such as it has traditionally exercised ever since its original organization as a mere agency of Congress to aid it in the performance of its constitutional duty to provide for payment of the debts of the Government. Such administrative duties coexist with its judicial functions. See *Ex parte Bakelite Corp., supra,* 452, *et seq.* Its decisions rendered in its administrative capacity are not judicial acts, and their review, even though sanctioned by Congress, is not within the appellate jurisdiction of this Court. *Gordon* v. *United States,* 2 Wall. 561; and see the views expressed by Taney, C. J., in 117 U. S. 697; *In re Sanborn, supra.* But notwithstanding the retention of such administrative duties by the Court of Claims, as in the case of the courts of the District of Columbia, Congress has provided for appellate review of the judgments of both courts rendered in their judicial capacity. And this Court has held, by an unbroken line of decisions, that its appellate jurisdiction, conferred by Art. III, § 2, Cl. 2 of the Constitution, extends to the review of such judgments of the Court of Claims; *De Groot* v. *United States,* 5 Wall. 419; *United States* v. *Jones, supra; Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 263; and of the courts of the District of Columbia; *Federal Radio Comm'n* v. *Nelson Bros. Co., supra,* and cases cited.

We have no occasion to consider what effect the imposition of non-judicial duties on the Court of Claims may have affecting its constitutional status as a court and the permanency of tenure of its judges. Cf. *Williams* v. *United States,* 289 U. S. 553. It is enough that, although the Court of Claims, like the courts of the District of Columbia, exercises non-judicial duties, Congress has also

authorized it as an inferior court to perform judicial functions whose exercise is reviewable here. The problem presented here is no different than if Congress had given a like direction to any district court to be followed as in other Tucker Act cases. Its possession of non-judicial functions by direction of Congress presents no more obstacle to appellate review of its judicial determinations by this Court, than does the performance of like functions by the courts of the District of Columbia or by state courts whose exercise of judicial power, in the cases specified in Article III, § 2, Cl. 1, of the Constitution, is reviewable here by virtue of Cl. 2 of § 2. Compare *Southwestern Bell Tel. Co.* v. *Oklahoma,* 303 U. S. 206 with *Barnett* v. *Rogers,* 302 U. S. 655. See also *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 225, 226; *Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290.

The Court of Claims' determination that the Special Act conferred upon it only non-judicial functions and hence that it had no judicial duty to perform was itself an exercise of judicial power reviewable here. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447. The case is not one where the court below has made merely an administrative decision not subject to judicial review, without purporting to act judicially or to rule as to the extent of its judicial authority as the ground of its action or refusal to act. *Postum Cereal Co.* v. *California Fig Nut Co.,* 272 U. S. 693. Jurisdiction to decide is jurisdiction to make a wrong as well as a right decision. *Fauntleroy* v. *Lum,* 210 U. S. 230, 234, 235; *Burnet* v. *Desmornes,* 226 U. S. 145, 147.

*Reversed.*

Mr. Justice Jackson took no part in the consideration or decision of this case.