SUE & SAM MANUFACTURING COMPANY, Appellee,

v.

B–L–S Construction COMPANY, Appellant,

v.

Robert O. LEE, Trading as St. Stephen's Knitwear, Appellee.

SUE & SAM MANUFACTURING COMPANY, Plaintiff,

v.

B–L–S CONSTRUCTION COMPANY, Appellee,

v.

Robert O. LEE, Trading as St. Stephen's Knitwear, Appellant.

Nos. 75–1340, 75–1341.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 12, 1975.

Decided April 21, 1976.

Morris D. Rosen, Charleston, S. C. (Dennis & Dennis, Moncks Corner, S. C., on brief), for B–L–S Const. Co.

J. W. Cabaniss, Charleston, S. C. (Grimball & Cabaniss, Charleston, S. C., on brief), for Sue and Sam Mfg. Co.

B. Allston Moore, Jr., Charleston, S. C. (Buist, Moore, Smythe & McGee, Charleston, S. C., on brief) for Robert O. Lee.

Before BRYAN, Senior Circuit Judge, WINTER and WIDENER, Circuit Judges.

**WIDENER, Circuit Judge:**

This diversity case arose in South Carolina on account of damage caused by the roof of a building which had leaked rain during 1971, and had collapsed during a snowstorm during 1973. It concerns the common law duties of the parties to each other, as well as the construction of two parts of a lease agreement. We affirm in large part, but, with respect to one counterclaim, we vacate the judgment of the district court and require dismissal for want of subject matter jurisdiction.

B–L–S Construction Company (B–L–S) is a South Carolina corporation, a citizen of South Carolina. It designed and constructed a building made of concrete block with a galvanized gable roof, which it leased to Robert O. Lee, a citizen of South Carolina, trading as St. Stephens Knitwear (Lee), who operated a sewing business in the building.

Sue & Sam Manufacturing Company (Sue & Sam), a New York corporation and citizen of New York, had shipped to Lee some short sets and shirts, cut but not finished, on which Lee was to finish the manufacturing. At the time Sue & Sam's goods were in the possession of Lee and in the building for the work to be done on them, in June 1971, B–L–S was constructing an addition to the original building to be used for storage and offices. During the instruction of the additional building, the B–L–S workmen had lifted up the metal on the roof of the original building to permit the old and new roofs to be joined together, but had failed to complete the work properly, and between Friday afternoon, June 24, 1971, and Monday, June 28, rainwater leaked in at the area of the joinder of the old and new roofs, damaging Sue & Sam's goods which, as noted, were then stored in the custody of Lee in the original building. The district court found as a fact that "the [1971] leak and resulting damage were due to the failure of B–L–S Construction Company and its employees to properly join the old and new roofs before leaving the job for that week-end." The rainwater further damaged machines and equipment of Lee

and resulted in additional expenses to Lee in attempting to salvage the goods belonging to Sue & Sam.

At the time of this loss, the original lease dated March 30, 1970 was in effect. After the rain loss, later in 1971 and in 1972, two addenda to the original lease were executed which in part provided that Lee would be "responsible for his machines, goods, and materials which he places in or on the leased premises, and . . . [B–L–S] has no responsibility in regard to damages sustained by . . . [Lee] as a result of fire, storm, rain, hail, or any other accidents or events in nature or causes originating by acts of mankind."

On or about February 9, 1973, there was a heavy snowstorm and the roof of the original building collapsed, damaging Lee. The district court credited the testimony of an expert witness that the roof did not meet engineering standards and was improperly designed and constructed. It found as a fact that "the collapse of the roof was caused by its negligent design and construction by B–L–S Company."

The original lease agreement contained a provision that Lee would carry insurance to hold harmless B–L–S from all claims or demands of whatsoever nature arising "out of the use and occupancy of the premises."

Sue & Sam sued B–L–S on account of the 1971 rain loss. On this claim, the district court, on its finding of negligence by B–L–S in failing to join properly the old and new roofs, entered judgment for $17,250 in favor of Sue & Sam. B–L–S had filed a third-party complaint against Lee for indemnity, which alleged that the loss arose out of "the use and occupancy of the premises," that Lee did not carry insurance to cover it, and was thus liable to it for any recovery by Sue & Sam. The district court found as a fact that "the loss did not result directly from the 'use or occupancy' of the premises," and concluded that Lee was not required under the lease to maintain insurance to cover the negligence of B–L–S. The district court dismissed the third-party complaint of B–L–S against Lee.

Lee had filed two counterclaims against B–L–S, one for damages on account of his 1971 rain damage occasioned by the negligence of B–L–S; the second for damages occasioned by the collapse of the roof in the snowstorm of 1973, again occasioned by the negligence of B–L–S. The district court awarded Lee $1,350 on his counterclaim against B–L–S for the 1971 rain damage, but held that B–L–S, as to the 1973 snow damage counterclaim, being under an addendum rather than the original lease, was exculpated from liability by the exculpatory clause in the addendum, although it found as a fact that Lee had been damaged due to the original negligent design and construction of the building.

B–L–S and Lee appeal from the adverse rulings against them. We affirm, on the opinion of the district court, the award in favor of Sue & Sam against B–L–S in the amount of $17,250; the dismissal of the third-party complaint of B–L–S against Lee; and Lee's award on his counterclaim against B–L–S on account of the 1971 rain damage in the amount of $1,350. Its findings of fact with respect to those claims are not clearly erroneous and its conclusions of law are free from error.

With respect to the counterclaim of Lee against B–L–S for the 1973 damage caused by the collapse of the roof during the snowstorm, we vacate the order of the district court for dismissal, without prejudice, for want of subject matter jurisdiction.

Lee's counterclaim on account of the 1971 rain damage was for negligence taking place during the construction of the additional building in 1971. His counterclaim for the 1973 collapse of the roof caused by snow was on account of the negligence of B–L–S in the original design and construction of the building.

FRCP 13(a) requires the assertion of a compulsory counterclaim against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, while FRCP 13(b) permits the filing of a counterclaim against an opposing party not arising out of the transaction or occurrence that is the

subject matter of the opposing party's claim.

So far as the counterclaims of Lee are concerned, B–L–S and Lee are the opposing parties. Moore's Federal Practice, 1974, Vol. 3, p. 13–134 (hereafter Moore's). Thus, if the counterclaims on account of the 1971 rain damage on the one hand, and the 1973 snow damage on the other, are compulsory, Lee must assert them, while, if not compulsory, he may assert them.

But FRCP 13(a) and (b) are subject to the qualification that a permissive counterclaim must have an independent jurisdictional base,[1] while a compulsory counterclaim need not have. The leading text writers and the cases are in agreement and are consistent on this point. Wright and Miller, Federal Practice and Procedure, Vol. 6, §§ 1414, 1422 (hereafter Wright and Miller); Moore's, p. 13–379 et seq., p. 13–481. The jurisdiction of the court as to a compulsory counterclaim is ancillary jurisdiction.[2] Wright and Miller, § 1422; Moore's, p. 13–379. While these text writers may be somewhat critical of the requirement of an independent jurisdictional base in the case of a permissive counterclaim, as perhaps in conflict with the general policy of the federal courts to dispose of all the litigation at hand in a single suit for the sake of efficiency and economy, they nevertheless are in agreement that the cases are uniform in requiring a separate jurisdictional base for permissive counterclaims. And Wright and Miller, § 1414, calls attention to FRCP 82, which provides that the federal rules do not "extend or limit the jurisdiction of the United States district courts."

With these principles in mind, since both B–L–S and Lee are citizens of South Carolina, whether or not Lee's two counterclaims were properly tried on the merits in this proceeding depend on whether or not they arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim." FRCP 13(a), (b).

Apparently that subject has not been addressed by this circuit, and from the legion of cases from other circuits and district courts, Wright and Miller, in § 1410, have synthesized the various tests which are used by the courts to determine whether a claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.[3] We keep in mind that the court in *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), defined transaction, under former equity rule 30 but as used in the same context found here, as a word of flexible meaning which may comprehend a series of many occurrences depending not so much on the immediateness of their connection as upon their logical relationship. The case further took cognizance that essential facts alleged by one party entered into and constituted in part the cause of action set forth in the opposing party's counterclaim, and took notice that the facts might not be precisely identical and that the counterclaim embraced additional allegations, did not matter. We are also reminded that the rule should be given a broad realistic interpretation to avoid a multiplicity of suits. Moore's, p. 13–300.

The various tests which the cases reveal are these as applied here:

1. Are the issues of fact and law raised by the claim of B–L–S and the counterclaims of Lee largely the same?

Applying this test to the 1971 and 1973 claims, we find that Lee had pleaded as a defense to the claim for indemnity by B–L–S that B–L–S was negligent in its then present construction of the roof in 1971. Not only was the matter pleaded by Lee, it was tried and found as a fact by the district

---

1. E. g. *O'Connell v. Erie Lackawanna Railroad,* 391 F.2d 156 (2d Cir. 1968); *Diamond v. Terminal Railway,* 421 F.2d 228 (5th Cir. 1970); *Chance v. County Board,* 332 F.2d 971 (7th Cir. 1964).

2. E. g. *Warren G. Kleban v. Caldwell,* 490 F.2d 800 (5th Cir. 1974); *Pipeliners Local Union No. 798 v. Ellred,* 503 F.2d 1193 (10th Cir. 1974).

3. See Moore's § 13.13. We later discuss the application of the tests from Wright and Miller.

judge, who found that since the negligence of B–L–S was not within the indemnifying provision for the "use or occupancy of the premises" that Lee was not liable for indemnity. While proof of the third-party complaint of B–L–S against Lee may have included other matters, it necessarily brought on the negligence issue as a defense, which was both pleaded and tried upon the trial of the third-party complaint. Also, the factual background of the reason for the damage was necessary proof in the indemnity claim. So the answer to question 1 is yes or at least a qualified yes for the 1971 counterclaim.

With respect to Lee's counterclaim on account of the 1973 snow damage, the answer must be an unqualified no. The facts are different, current 1971 construction on the one hand concerning only the leaving open of a gap between two roofs on a week-end, and 1970 or prior original design and construction of the older building on the other. Although negligence in the abstract context of an actionable act or omission is present in the law raised in the defense of the claim and in the counterclaim, the law of negligence with respect to the defense of the indemnity claim and in the indemnity claim itself concerns only negligence in leaving the gap between the roofs open for the week-end, while the negligence concerning the 1973 counterclaim concerns negligence in the original design and construction of the building, two entirely unrelated matters.

2. Would *res judicata* bar a subsequent suit on Lee's counterclaims, absent the compulsory counterclaim rule?

With respect to the 1971 counterclaim, the answer must be again yes, or at least a qualified yes. Although we are again reminded the claim of B–L–S against Lee was on an indemnity in a contract, the defense to it, which was both pleaded and tried, was the negligence of B–L–S, which having been found as a fact as the cause of the damage to Sue & Sam, justified a ruling by the district court that the indemnity clause of the lease agreement did not apply. The facts as to how the damage arose were

necessary to the proof of the indemnity claim. While Lee's counterclaim for the 1971 damage was solely on account of his own damage, not that to Sue & Sam, the negligence issue was precisely the same, the parties were precisely the same, and as to negligence the facts are precisely the same. Accordingly, a trial and judgment on the negligence issue would have barred a subsequent suit by Lee against B–L–S on that issue, if not on the grounds of *res judicata*, then on the grounds of estoppel by judgment, or collateral estoppel, or related doctrines, however called. Restatement, Judgments, § 68; see *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

With respect to the counterclaim for the 1973 snow damage, the result must be the same here as with respect to the first test mentioned above, an unqualified no. The 1971 and the 1973 damage was entirely unconnected. Although the parties are the same, the facts are entirely different; the issues are different; the causes of action did not arise at the same time and have no connection with the acts or omissions giving rise to negligence in the other negligence claim. The 1973 snow damage claim had no connection at all to any aspect of the 1971 indemnity claim. Both the facts and the issues are entirely unrelated.

3. Will substantially the same evidence support or refute B–L–S's claim as well as Lee's counterclaim?

With respect to the 1971 rain damage claim, the answer to the third question is also yes, or at least a qualified yes. Although in the suit on the indemnity agreement evidence not relating to the negligence and to the amount of Lee's damage was properly admissible, all of the evidence relating to the negligence issue was the same. The facts which proved the cause of damage giving rise to the claim for indemnity also proved the defense of negligence which refuted the claim. The only additional evidence required by the counterclaim was that of Lee's damage.

Again, the answer to question 3 must be an unqualified no as it relates to the claim

for 1973 snow damage. The evidence with respect to the snow damage has no place at all in the proof of the claim for the 1971 damage. The two occurrences are very nearly two years apart in time. The evidence as to negligence in the original design and construction of the building has nothing to do with the proof of negligence as to the 1971 rain damage.

4. Is there any logical relation between B–L–S's claim and Lee's counterclaims?

As with the previous three questions, with respect to the 1971 rain damage, the answer must be yes. The damage for which indemnity was sought by B–L–S against Lee was occasioned by the damage caused by the rain coming in through the joint of the two roofs. The proof of the claim for indemnity and especially its defense required proof of many of the same facts as were necessary to the proof of the counterclaim. The claims arose at the same time, and the occurrence which occasioned both the claim of Sue & Sam against B–L–S and the third-party claim of B–L–S against Lee was the fact that B–L–S had negligently allowed the water to enter the building.

The claim for the 1973 snow damage, however, has no relation to the 1971 rain damage claim, so the answer to the question as it concerns the 1973 snow damage claim must be no. The only connection is that it was the same roof. Differences in time, the causes of action, the cause of the damage, the proof of facts, and the issues would rule out a logical relation between the claim for indemnity on account of the rain damage and the counterclaim on account of the snow damage.

■ Although a certain attractiveness attaches itself to a rule of certainty, we are of opinion that it is better to lay down no inflexible rule at this time, other than to mention that prudence dictates an examina-

tion of *Moore v. New York Cotton Exchange* in such cases. We have considered the four tests mentioned above in arriving at our conclusion. Applying the tests, we see that the answer to each of the questions in the case of the 1971 claims is either yes, or at least a qualified yes. The cases have used an affirmative answer to the application of these questions as meaning that the counterclaim is compulsory. Since the answer to all of the questions is at least a qualified yes, we are of opinion this is no occasion to distinguish between the rules, all of which have both their good and bad points as discussed in the text,[4] and are of opinion that Lee's counterclaim for the 1971 rain damage is compulsory, as arising out of the same transaction or occurrence, and was properly adjudicated on its merits in this case.

With respect to the claim for 1973 snow damage, however, our conclusion is to the contrary. As we have noted above, the answer to each of the four tests used by the courts is an unqualified no. In such circumstances, we again feel it would be inappropriate to set down an inflexible rule, and are of opinion that the counterclaim for the 1973 snow damage was a permissive counterclaim, as it did not arise out of the transaction or occurrence which was the subject matter of the opposing party's claim. Since both B–L–S and Lee are citizens of South Carolina, there was no independent jurisdictional base for the assertion of such permissive counterclaim, and it was improperly adjudicated on its merits in this case. We express no opinion either as to the merits of the counterclaim or as to the merits of the defense,[5] and direct that on remand the counterclaim for the 1973 snow damage be dismissed without prejudice for lack of subject matter jurisdiction.

Accordingly, the judgment of the district court will be affirmed in all respects except

4. See Wright and Miller, § 1410.

5. There being no jurisdiction over the permissive counterclaim, we are without authority to decide the merits of the controversy. See *Gen. Committee of Adjustment of Brotherhood of*

*Locomotive Engineers for Missouri-Kansas RR v. Missouri-Kansas-Texas R. Co.*, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); *Pope v. United States*, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed 3 (1944); *Warren G. Kleban*, supra, at 803, n. 2.

as to the counterclaim for the 1973 snow damage.

Sue & Sam's costs on appeal will be paid by B–L–S; B–L–S will bear its own appellate costs; and Lee will bear his own appellate costs.

AFFIRMED IN PART; VACATED IN PART; and REMANDED.