**ST. JOSEPH COUNTY, Indiana, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 71T10–9703–TA–00139.

Tax Court of Indiana.

Aug. 13, 1997.

Mark D. Boveri and James M. Lewis, Barnes & Thornburg, South Bend, for Petitioner.

Jeffrey A. Modisett, Attorney General, Joel Schiff and David Arthur, Deputy Attorneys General, Indianapolis, for Respondent.

FISHER, Judge.

St. Joseph County, Indiana (County) appeals a final decision of the State Board of Tax Commissioners (State Board) requiring it to proceed with petition-remonstrance procedures before continuing with its project to construct a new jail. *See* IND.CODE ANN.

§ 6–1.1–20–3.2 (West Supp.1996). The parties do not dispute the facts of the case and both parties have filed motions for summary judgment. The County argues that the jail project is not a "controlled project" as defined by IND.CODE ANN. § 6–1.1–20–1.1 (West Supp.1996), and is therefore not subject to petition-remonstrance procedures. The specific contention of the County is that the jail project fits within an exception to the definition of a "controlled project" which excludes those projects, "required by a court order holding that a federal law mandates the project." IND.CODE ANN. § 6–1.1–20–1.1(5). This Court, holding that the jail project is not a "controlled project," REVERSES the final determination of the State Board and GRANTS summary judgment in favor of the County.

## FACTS AND PROCEDURAL HISTORY

The lengthy history surrounding this case begins with several suits filed by past and present inmates of the St. Joseph County Jail complaining of overcrowding, substandard conditions, and various violations of U.S. Constitutional rights, particularly those protected by the Fourteenth Amendment. These suits, which sought $48,000,000 in damages and the construction of a new jail, were consolidated into class action litigation by the United States District Court for the Northern District of Indiana, South Bend Division (Jail Case).[1] The parties in the Jail Case negotiated a Consent Decree resolving the litigation and submitted the same for approval to the District Court. Magistrate-Judge Robin Pierce issued a "Recommendation and Report" concerning this Consent Decree on June 5, 1996. On August 15, 1996, presiding Judge Allen Sharp adopted the Consent Decree as recommended by Magistrate Pierce and on August 30, 1996 entered judgment incorporating the terms of the Consent Decree. This judgment requires the County to begin construction on a new jail having a minimum capacity of 600 inmates on or before December 31, 1996.

---

1. The class action litigation is captioned *Winston, et al. v. Speybroeck,* Cause No. 3:94CV–0150AS, 1996 WL 476692 (N.D.Ind.1996).

The County sought State Board approval of its planned construction, financing, and lease agreement. Several persons objecting to the jail project petitioned the State Board pursuant to IND.CODE ANN. § 36–1–10–14 (West Supp.1996). This petition resulted in a State Board hearing that was conducted on November 26, 1996. The State Board found that the jail project was necessary, wise, cost efficient, reasonable in size, and designed to allow for cost-effective expansion in the future, but conditioned its approval of the jail project on the County's obtaining consent for the project through the petition-remonstrance procedures of IND.CODE ANN. § 6–1.1–20–3.2. On February 7, 1997, the plaintiff class in the Jail Case petitioned the District Court for a finding that the County was in contempt of the Court's order for failing to timely begin construction of a new jail. On March 27, 1997, Judge Sharp declined to find that the County was in contempt and implied that, if so inclined, the County should pursue relief from the State Board's decision under Indiana law. On that same day, the County filed an original tax appeal with this Court seeking reversal of the State Board's Final Determination. The parties submitted stipulated facts on July 1, 1997. The County filed its motion for summary judgment on July 11, 1997, and the State Board filed its own summary judgment motion on July 30, 1997. This Court heard oral arguments on August 4, 1997. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION
### Standard of Review

■ This Court gives the decisions of the State Board great deference so long as the Board acts within the scope of its authority. Bender v. State Bd. of Tax Comm'rs, 676 N.E.2d 1113, 1114 (Ind.Tax Ct.1997). As such, final determinations by the State Board are only reversed by this Court when the decision is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. Id. at 1113–14. Cross motions for summary judgment do not alter this standard. Roehl Transp., Inc. v. Department of State Revenue, 653 N.E.2d 539, 541 (Ind.Tax Ct.1995).

### Discussion

Pursuant to Indiana law, any "controlled project" using property taxes to pay a debt service or lease rental is required to go through a petition-remonstrance process.[2] In this case, the County sought a lease agreement and bond financing from the St. Joseph County · Jail Building Corporation. Therefore, petition-remonstrance proceedings would be necessary if the project were a "controlled project."

■ A "controlled project" is any project, "financed by bonds or a lease, except for the following: ... (5) A project that is required by a court order holding that federal law mandates the project." IND.CODE ANN. § 6–1.1–20–1.1. The sole issue presented for this Court's review is whether the jail project fits within the exception provided in subsection (5) (the Exception) and is thus not a "controlled project." The three basic elements that must be shown to fit within the Exception are: (1) a court order; (2) requires the project; and (3) holds that federal law mandates the project. The County satisfies each portion of this test.

The first portion of the test is whether there is a court order. In a typical case, the answer to this question would seem obvious. Either there is a court order or there is not. Here, however, this simple proposition has been elevated to a point of contention. The State Board argues that the Consent Decree

---

**2.** The petition-remonstrance process allows taxpayers the opportunity to block the imposition of property taxes to pay a debt service or lease rental. The process for petition-remonstrance proceedings is detailed in IND CODE ANN. §§ 6–1.1–20–3.1 to 3.2. Summarizing those procedures, once the statutorily defined number of signatures has been collected on a petition requesting petition-remonstrance, the owners of real property within the particular political subdivision can file either a petition supporting the project or a remonstrance opposing it. If more remonstrance signatures than petitions are obtained, the project may not proceed for at least one year. Additionally, the Court notes that there are two versions of IND.CODE ANN. §§ 6–1.1–20–3.2. This has previously been discussed in Boshart v. State Bd. of Tax Comm'rs, 672 N.E.2d 499 (Ind.Tax Ct.1996), and would not change the result here.

adopted and issued by Judge Sharp, as well as his "Judgment in a Civil Case" issued on August 30, 1996, are somehow not court orders. It is troubling to think that the State Board believes the declarations and statements of the United States District Court in a document labeled "Judgment in a Civil Case" are not orders. Indeed, the words directly proceeding paragraph one of the document are, "IT IS HEREBY ORDERED, ADJUDGED, AND DECREED...." (Stip. of Facts Ex. D.) Paragraph Five of that same document states that the County Sheriff, County Commissioners, and County Council *shall* construct and finance a new jail. *Id.* This is the very essence of a court order. In addition, the consent decree itself constitutes a Court Order.

The United States Supreme Court has discussed the force of consent decrees. In the case of *Pope v. United States*, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944), the Supreme Court stated that rendering judgment on consent is, "a judicial function and an exercise of the judicial power." *Id.* at 12, 65 S.Ct. at 22. As recently as 1992, the Supreme Court reiterated this stance. In *Rufo v. Inmates of Suffolk Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992), the Court stated that a consent decree was enforceable as a court order and judicial decree. The Court also stated that a consent decree was enforceable by contempt proceedings. *Id.* Although a consent decree may look like a contract on its face, once it is approved and adopted by a court it becomes a court order. The contractual nature of the document is effectively subsumed into the court ordered judgment. *See Ferree v. Ferree*, 71 N.C.App. 737, 323 S.E.2d 52, 55 (1984).

The second prong of the test is that the court order requires the project. The language of the consent decree and the "Judgment in a Civil Case" makes clear that the project is required. Words such as *shall* and *ordered* were used by Judge Sharp in his judgment and were included in the Consent Decree in the Jail Case. Action on the part of the County is mandatory.

The final prong of the test is that, "a court order holds that federal law mandates the project." IND.CODE ANN. § 6–1.1–20–1.1(5). Nothing less than the United States Constitution mandates the project. Moreover, the Consent Decree and Judge Sharp's Judgment recognized this.

"It is axiomatic that our Federal Constitution is the law, indeed the supreme law, of the land.... Its hallowed status in our national culture cannot be gainsaid." The Honorable J. Daniel Mahoney, *Thoughts On Originalism*, 72 NOTRE DAME L.REV. 1225, 1225 (1997). "This Constitution ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI. The Constitution is the federal law. If it requires improved jail facilities, then federal law mandates construction of a new jail. From a reading of the Judgment and Consent Decree adopted by Judge Sharp, one can clearly determine that this is precisely what Judge Sharp interpreted the Constitution to require. The Judgment issued states that the jail does not meet current federal Constitutional standards and the jail cannot be modified to meet these standards. (Stip. of Facts Ex. D, ¶¶ 31–32.) Further, the Judgment states that the only way for the County to meet federal Constitutional standards is for a new jail to be constructed. (*Id.* at ¶ 33.) Judge Sharp could not be more clear in his interpretation of what the Constitution requires were he here to personally explain it. Federal law mandates that the jail be built.

Much has been made in this case over Judge Sharp's statement that the state and local process should work in its "own way" and that democracy can be time consuming, tiresome, and messy. (Stip. of Facts Ex. E, at 3.) Although these propositions are indeed true, they do not require the County to proceed through the petition-remonstrance process as the State Board argues. Our system of government is commonly thought of as a model democracy. It is, in actuality, a *representative* democracy. Democratic rights are protected by our right to vote in organized and fair elections. Instead of each

 

citizen making a choice and voicing their opinion on every issue of government, citizens make a singular choice at the ballot box to elect a representative who can adequately protect their interests. The citizens of St. Joseph County elected the representatives who have approved the plans for the jail project. Judge Sharp recognized this representative process in his memorandum issued on June 10, 1996. "The question before this court is not whether a new jail should be built in St. Joseph County, Indiana, or where that jail should be located. Those decisions are political ones which must be confronted and addressed by those in state and local government who are consigned by law to do so." (Stip. of Facts Ex. E, at 4.) The County officials who have developed and approved the plan for the new jail have been consigned by law to do so. They were duly elected by the citizens of St. Joseph County and have been ordered by a federal court to finance and build a new jail.

Were this Court to hold that the construction of a new jail is a "controlled project" and require petition-remonstrance proceedings, the County might never get approval of its new jail from the property owners. This is an absurd result. The United States District Court for the Northern District of Indiana has determined that a new jail must be built. If petition-remonstrance proceedings were ordered by this Court, the County might face an unpleasant proposition. Either the County would risk being in perpetual violation of the District Court's order or be in perpetual violation of this Court's order. This Court will not force the County to choose between facing the Scylla or the Charybdis. Although the petition-remonstrance process is designed to be a check on unwise spending of taxpayer money, the Indiana legislature recognized that at times this process would be unworkable and in conflict with other laws. Therefore, the legislature has attempted to provide exceptions to the process. One such exception was provided for instances where a court has said federal law requires the project. That is the case here. The County's jail project fits squarely within the exception to the definition of "controlled project" and is therefore not required to proceed through the petition-remonstrance process. For the

State Board to hold otherwise constitutes an abuse of discretion.

### CONCLUSION

For the foregoing reasons, the final determination of the State Board is REVERSED and summary judgment is GRANTED in favor of St. Joseph County, Indiana.