**WHITESELL INTERNATIONAL CORPORATION d/b/a Profile Steel and Wire, Plaintiff,**

v.

**SMITH JONES, INC. d/b/a Midwest Manufacturing Co., and Amtek Auto Limited, Defendants.**

No. 4:09–cv–00261–JEG.

United States District Court, S.D. Iowa, Central Division.

June 7, 2011.

Dennis J. Mitchell, Meardon Sueppel &
Downer PLC, Iowa City, IA, for Whitesell
International Corporation.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on
Motion for Default Judgment, pursuant to
Federal Rule of Civil Procedure 55(b)(2),
brought by Plaintiff Whitesell Internation-

al Corporation d/b/a Profile Steel and Wire (Whitesell). The Court held a hearing on the motion on May 19, 2011. Attorney Dennis J. Mitchell represented Whitesell. There was no appearance on behalf of Defendants Smith Jones, Inc. d/b/a Midwest Manufacturing Co. (Smith Jones) or Amtek Auto Limited (Amtek) (collectively, Defendants) at the hearing.[1] The matter is fully submitted and ready for disposition.

## I. BACKGROUND

■ "If the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint except as to the amount of damages are taken as true." *Brown v. Kenron Alum. & Glass Corp.*, 477 F.2d 526, 531 (8th Cir.1973) (quotation omitted); *see also Stephenson v. El–Batrawi*, 524 F.3d 907, 915 n. 9 (8th Cir.2008) (holding that where the defendant was in default, "the district court correctly accepted the fact allegations of the complaint as true").[2]

On September 30, 2008, Whitesell provided a Supply Agreement Proposal (the Proposal) to Smith Jones that provided the terms for Whitesell's proposed sale of steel products to Smith Jones. The Proposal included pricing for Whitesell's manufactured products, a requirement that Smith Jones provide Whitesell with rolling ninety-day forecasts of its steel needs with the most current thirty-day period broken down into weekly intervals, and that Smith Jones would be obligated to purchase the steel that Whitesell acquired pursuant to Smith Jones' forecasted requirements. After the Proposal was sent to Smith Jones, the parties agreed to revised pricing.

Smith Jones accepted the Proposal by its conduct, placing blanket orders for steel products, and supplying Whitesell with rolling forecasts of its steel needs. In fulfillment of its obligations to Smith Jones under the Proposal, Whitesell purchased raw steel, manufactured the steel to Smith Jones' unique specifications, and began to deliver the steel products to Smith Jones in October 2008. Whitesell alleges that it delivered $136,664.96 worth of product to Smith Jones for which Smith Jones never compensated Whitesell, and that Whitesell acquired additional steel inventory valued at $932,092.73 in order to meet Smith Jones' forecasted requirements. Because the steel Whitesell produced for Smith Jones was manufactured pursuant to Smith Jones' unique specifications, Whitesell has been unable to find another buyer for most of the inventory Whitesell purchased to fulfill Smith Jones' forecasted requirements. On June 26, 2009, Whitesell filed this action against Smith Jones, alleging that Smith Jones failed to comply with the terms of the Proposal. On September 13, 2010, Whitesell filed an amended complaint, adding Amtek as a defendant.[3]

1. Smith Jones is a wholly owned subsidiary of Amtek, a publicly traded company on the Bombay Stock Exchange with its corporate office located in New Delhi, India.

2. The April 19, 2011, Report and Recommendation by Magistrate Judge Shields, which was later accepted by this Court, *see* p. 2–3, *infra*, places Defendant in default and thus effectively strikes the previously filed Answer.

3. The record available to the Court indicates that Whitesell has not yet successfully served Amtek. According to Whitesell, although it has "sent the necessary copies of a Request for Service Abroad of Judicial Documents under the Hague Convention to the Ministry of Law and Justice in New Delhi, India," Whitesell has learned that "it can sometimes take up to a year to get service effectuated under the Hague Convention in India." Status Update on Service of Foreign Def., ECF No. 19.

During a March 3, 2011, status conference, counsel for Smith Jones informed the Court that they were experiencing communication issues with Smith Jones and that they intended to move for leave to withdraw as counsel for Smith Jones. On March 8, 2011, the Honorable Thomas J. Shields, Chief Magistrate, United States District Court for the Southern District of Iowa, entered an order that provided counsel for Smith Jones until March 11, 2011, to file a motion for leave to withdraw as counsel, and stated that if the Court granted the motion for leave to withdraw, Smith Jones would be provided with a specific temporal period in which to retain new counsel to enter an appearance. Judge Shields cautioned Smith Jones that he would enter a report and recommendation that judgment be entered against Smith Jones if Smith Jones failed to comply with a Court order. Counsel for Smith Jones timely filed a motion for leave to withdraw as counsel, which the Court granted on March 15. The March 15, 2011, Order provided Smith Jones twenty-one days to have new counsel enter an appearance, and again cautioned Smith Jones that

> [f]ailure on the part of defendant to have new counsel enter an appearance in accordance with this order shall result in this magistrate judge filing a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) recommending to District Judge James E. Gritzner that default be entered against Defendant Smith Jones, Inc. d/b/a Midwest Manufacturing Co., and that this case proceed with a hearing on damages.

March 15, 2011, Order, ECF No. 25. By April 6, 2011, no appearance having been made on behalf of Smith Jones, Whitesell filed a motion for default judgment against Smith Jones. On April 19, 2011, Judge Shields recommended that default be entered against Smith Jones and that a hearing on damages and judgment be scheduled. After allowing a period of time for the parties to file written objections to Judge Shields' Report and Recommendation and after making a de novo review, the Court accepted Judge Shields' Report and Recommendation, finding that Smith Jones failed to comply with Judge Shields' March 15, 2011, Order, and instructed the Clerk of Court to enter default against Smith Jones. The Clerk of Court entered default against Smith Jones on May 4, 2011.

## II. DISCUSSION

■■■ "[An] entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir.1998) (citation omitted). After default has been entered, a plaintiff can move for a default judgment pursuant to Rule 55(b)(2):

> [T]he party must apply to the court for a default judgment.... The court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed.R.Civ.P. 55(b)(2); *see also El–Batrawi*, 524 F.3d at 915 ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." (quoting *Pope v. United States*, 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944))). " '[A] default judgment cannot be entered until the amount of damages has been ascertained.' " *Hagen v. Sisseton–Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir.

2000) (quoting *Enron Oil Corp. v. Diaku-hara*, 10 F.3d 90, 97 (2d Cir.1993)). Whitesell must prove its damages by a preponderance of the evidence. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir.2001). "Once the amount of damages has been established, the court may enter judgment pursuant to the rule." *El–Batrawi*, 524 F.3d at 916.

■ After considering the testimony provided at the hearing by Robert R. Weiss (Weiss), Chief Operating Officer and Secretary Treasurer for Whitesell, and reviewing the exhibits that Whitesell provided at the hearing, the Court finds that the requirements of Rule 55 have been satisfied. First, default was entered against Smith Jones on May 4, 2011. Second, the damages Whitesell requests are ascertainable on this record.

■ Weiss testified that Smith Jones opened blanket purchase orders for steel from Whitesell according to the terms of the Proposal. Weiss explained that Whitesell delivered steel product valued at $600,000 to Smith Jones and that Smith Jones had expressed no complaint with regard to the price charged, the quantity of steel, or the quality of steel. Although Smith Jones paid for most of the product that Whitesell delivered, Weiss said that Smith Jones is $136,664.96 in arrears for product that Whitesell delivered. In addition to Weiss' testimony, Exhibits 1, 2, 3, and 6 support an award of $136,664.96. Exhibit 1 provides an accounting of shipments for which payment by Smith Jones is more than ninety-days past due, and shows that Smith Jones is $136,664.96 past due. Exhibit 2 is a copy of Smith Jones' response to Whitesell's requests for admissions, in which Smith Jones admitted that it owes Whitesell $136,664.96 for product that was delivered by Whitesell in Decem-

ber 2008.[4] Exhibit 3 is a copy of the Proposal that outlines the agreement between Whitesell and Smith Jones, which includes, in pertinent part, that Whitesell will provide 100% of the [Smith Jones] wire form material for the balance of 2008, and beyond. The forecasted volumes provided by [Smith Jones] and the pricing for each material is shown on [attached] Schedule A.... These prices will be firm for the duration of this proposal as long as a combined minimum of 5,000,000 annual pounds of product is ordered, or until any combination of material cost and shipping cost, increases by 10%, or more. If that occurs, the amount in excess of 10% will be passed on to [Smith Jones]. The reverse would be true if a combination of these elements reduce in cost. All variable scrap surcharges in effect at the time of delivery are in addition to the prices shown on Schedule A. The October 2008 surcharge is $24.630/cwt.

Ex. 3, May 19, 2011, Hrg. Exhibit 6 consists of thirty-four October 2008 blanket purchase orders sent from Smith Jones to Whitesell. The Court finds that the evidence supports an award of $136,664.96 for steel product that Whitesell delivered to Smith Jones.

■ Further, the record supports Whitesell's claim that Smith Jones is obligated to compensate Whitesell for steel that Whitesell purchased in order to meet Smith Jones' forecasted requirements. The Proposal recites that "[Smith Jones] will be responsible for steel purchased that is based on the [Smith Jones'] forecasted requirements." Ex. 3, May 19, 2011, Hrg. Exhibit 5 reflects the annual forecast that Smith Jones provided to Whitesell, which totaled 6,900,000 pounds of steel. Weiss said that Whitesell needed to maintain an

---

4. Recognizing Defendant has been placed in default and its responsive pleading stricken, the Court references the response to the Requests for Admissions merely as some additional corroboration of the testimony and additional exhibits offered at the hearing.

inventory of steel based upon Smith Jones' forecast because Whitesell needed 100 to 120 days to acquire raw steel from a steel mill, and then Whitesell needed another 10 to 20 days in order to manufacture the steel to Smith Jones' specifications. Because of its need to maintain an inventory, Whitesell had accumulated approximately 1,700,000 pounds of steel for Smith Jones. Weiss agreed that Whitesell stopped acquiring additional steel as soon as it realized that Smith Jones was not going to take deliveries of additional steel product. In addition to discontinuing its orders from steel mills for additional steel, Weiss testified that Whitesell attempted to mitigate its damages by selling the steel inventory to other customers, but that Whitesell was not able to sell all of the steel that it had accumulated because of the unique high grade of the steel product that Smith Jones had agreed to purchase from Whitesell.

Exhibit 4 provides an accounting of the total inventory that Whitesell purchased in order to meet Smith Jones' forecasted needs. In order to determine the total value of the finished goods that Whitesell retains in its inventory, Exhibit 4 accurately lists the part number and base price from Smith Jones' blanket purchase orders as reflected in Exhibit 6. The total cost per pound of steel as to each part number was determined by adding the base price for each part number to an October 2008 surcharge of $0.2463, as ex-

plained in the proposal, and a "Special 'Base Delta'" surcharge that Smith Jones requested be listed separately so that Smith Jones could pass the cost on to its customers. This total cost per pound as to each part number was then multiplied by the total inventory of steel, measured in pounds, that Whitesell retained for that part number, and totaled $932,092.73. Exhibits 3 and 6, as previously outlined, also support an award of $932,092.73. The Court finds that Weiss' testimony and Exhibits 3, 4, 5, and 6 support an award of $932,092.73 [5] to compensate Whitesell for the inventory it accumulated in order to fulfill Smith Jones' forecasted needs.

However, as the Court discussed at the hearing, Whitesell concedes that it has a responsibility to mitigate its damages, and the possibility remains that Whitesell will sell some or all of the inventory that it accumulated for Smith Jones to another customer. In the event Whitesell otherwise sells any of the excess 1,214,830 pounds of steel that it acquired to fulfill Smith Jones' forecasted needs, such sales will constitute an offset against the judgment that will be entered by the Court, less the reasonable costs of storing and handling the steel.

 Whitesell also requests both pre-judgment and post-judgment interest. The Court finds that Whitesell is entitled to pre-judgment interest on damages of $1,068,757.69, as calculated pursuant to Iowa Code § 668.13,[6] and that Whitesell is

---

**5.** The Court notes that a discrepancy exists between the total value of finished goods found in the version of Exhibit 4 electronically filed as an attachment to Whitesell's Hearing Brief in Support of Damages and the version of Exhibit 4 filed with the Court at the time of the hearing. Counsel for Whitesell explained that the version of Exhibit 4 electronically filed as an attachment to Whitesell's Hearing Brief in Support of Damages incorrectly calculated the total value of finished goods because it used the incorrect October 2008 surcharge rate of $0.1930 per pound

instead of the correct October 2008 surcharge rate of $0.2463 per pound as recited in the Proposal. The Court finds that the version of Exhibit 4 filed with the Court at the time of the hearing properly calculates the total value of finished goods that remains in Whitesell's inventory.

**6.** "In a diversity case, the question of prejudgment interest is controlled by state law." *Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1052 (8th Cir.2010) (quot-

entitled to post-judgment interest on damages of $1,068,757.69 as calculated at the statutory federal rate pursuant to 28 U.S.C. § 1961.

## III. CONCLUSION

The requirements for entry of default judgment as set forth in Rule 55(b) have been met. Whitesell's Motion for Default Judgment as to Defendant Smith Jones, Inc. d/b/a Midwest Manufacturing Co. must be **granted.** The Clerk is directed to enter Judgment against Smith Jones and in favor of Whitesell in the amount of $1,068,757.69, plus pre-judgment and post-judgment interest as outlined above.

**IT IS SO ORDERED.**

ing *Trinity Prods., Inc. v. Burgess Steel, L.L.C.,* 486 F.3d 325, 335 (8th Cir.2007)).