**CAMDEN COUNTY JAIL INMATES, Plaintiff,**

v.

**John PARKER, et al., Defendants.**

**Civ. A. No. 82–1946.**

United States District Court,
D. New Jersey.

Sept. 13, 1988.

Gary Mitchell, Office of the Public Advocate, Trenton, N.J., Sidney Schreiber, Sp. Master, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for plaintiff.

Joseph T. Maloney, Deputy Atty. Gen., Trenton, N.J., for defendants.

OPINION

HAROLD A. ACKERMAN, District Judge.

## I. INTRODUCTION

This is an action in which a class of inmates challenge the constitutionality of the conditions of their confinement, pursuant to 42 U.S.C. § 1983. The plaintiff class seeks relief from, *inter alia*, defendants John Parker, Warden of the Camden Coun-

ty Jail, William Simon, Camden County Sheriff and William Fauver, Commissioner of the New Jersey State Department of Corrections.[1] This matter is presently before the Court in response to this Court's *sua sponte* issuance of an order to show cause why the action should not be dismissed in light of the closing of the Camden County Jail and construction of a new facility.

## II. PROCEDURAL HISTORY

In their complaint, filed June 14, 1982, "inmates presently or in the future confined at Camden County Jail ("CCJ") in Camden, N.J." allege that the totality of the circumstances resulting from prison overcrowding caused the inadequate provision of living space, sanitary facilities, visitation, recreation, medical services, religious activities and the absence of a classification system. The plaintiff class specifically contends that:

These conditions and other practices or policies violate the plaintiff class' right to due process of law, equal protection of the laws and to be free from cruel and unusual punishment.

As relief, the plaintiffs seek, *inter alia*, a declaration that the conditions are unconstitutional, access to professional medical, dental and psychological services, a classification system, expanded visitation, opportunities to engage in recreation, access to a law library and an injunction to require a reduction in the prison population. In addition, plaintiffs request that this Court retain jurisdiction over the matter until it is satisfied that the conditions, practices and procedures about which plaintiffs complain are eliminated at the Camden County Jail and are not allowed to reappear in the future.

On July 16, 1982, I entered an order pursuant to Fed.R.Civ.P. 53(b) in which I appointed the Honorable Worral F. Mountain to serve as Special Master. Pursuant to that decree I ordered the Master to conduct an examination of the conditions at the Camden County Jail and prepare proposed findings of fact and conclusion of law as to whether the conditions of the inmates' confinement violate the fourteenth amendment of the United States Constitute. On December 12, 1984, I entered an order in which I appointed the Honorable Sidney M. Shreiber to substitute as Master and continue the responsibilities previously assigned to Justice Mountain.

On August 19, 1982, the plaintiffs moved to certify the class pursuant to Fed.R. Civ.P. 23(c)(1). The parties consented to class certification on September 24, 1982. Also in September of 1982, hearings were commenced before the Special Master, but were adjourned to permit the parties to engage in settlement discussions. As a result of these discussions, on November 18, 1982, the parties filed a consent judgment in which the parties

"set[ ] forth the present and future obligations, responsibilities and capabilities ... [of the defendants and that the] ... claims for relief shall be settled in accordance with the ... provisions [therein] which shall be binding upon the County and the State and their successors in office and shall constitute an order of this court and be enforceable as such."

In that order, the parties agreed that the general living conditions of and services provided at the facility are inadequate and set forth specific remedies as to the provision of an adequate classification system, library, medical treatment, recreation and visitation.

On August 3, 1983, the parties entered an unfiled amended consent judgment which modified the first consent judgment to increase the population capacity of the jail. On March 27, 1984, plaintiffs filed an order to show cause why defendant Camden County should not be held in contempt of this consent judgment. In response, on May 3 and May 31, 1984, I entered orders requiring the County to review its jail population and arrange for different housing for 25 inmates.

---

**1.** Also as defendants, the plaintiff class names Joseph Roberts, Jr., Eugene Feidman, Joseph Borreggine, Brenda Bacon, Joseph Milano, John Rodano, and Edward Sayers, members of the Camden County Board of Chosen Freeholders, and their successors in office.

On August 24, 1984, I again, at plaintiffs' request, ordered defendants to show cause why they should not be held in contempt. Defendants were found to have been in substantial noncompliance with the consent judgments and were ordered to implement all necessary procedures to ensure compliance.

On December 12, 1984, plaintiffs requested that this court issue another order to show cause why this court should not hold the county defendants, in contempt for noncompliance with the consent judgment.

On January 15, 1985, I entered an order in which I found that the county defendants had failed to comply with a provision of the November 1982 consent judgment regarding the agreement to maintain the population of the institution at certain predetermined levels. On that date, I also ordered the Special Master to hold hearings with respect to the remaining issues raised by plaintiffs. As a result of those hearings, the parties negotiated the terms of the second amended consent judgment. By letter dated July 17, 1985, the public advocate informed the court that the parties agreed upon a proposed second amended consent judgment and if the Court found it to be acceptable, the then pending order to show cause would be withdrawn. With respect to the scope of this order, the Public Advocate wrote

> The Second Amended Consent Judgment represents an attempt by the office of Inmate Advocacy and Camden County Counsel to address not only the remaining issues at the existing jail but *to provide for delivery of services and programs at the new jail.*

See Letter of Gerald P. Boswell to this Court dated July 17, 1985 (emphasis added).

On July 18, 1985, the parties appeared before me to address the scope and contents of the proposed decree in greater detail.

As the record clearly reflects, the Master recommended that certain modifications to the document be made. Of particular relevance here is the Master's recommendations with respect to the Court's continuing exercise of jurisdiction over the conditions at the new Camden County Correctional Institution. *See* ¶¶ 4, 14, 18, 19 and 22 of the Proposed Second Amended Consent Decree. On this issue, the Master took the position that the present action was brought to challenge the conditions that existed in the jail located on the sixth floor of the Camden County Courthouse and that the Court had jurisdiction only with respect to that facility and not the new jail. Transcript of Proceedings, dated July 18, 1985, at 11–12. The record also clearly reflects that I concurred with the Master's position that this Court lacked jurisdiction over the new county jail. *Id.* at 13–15.

In response, the Public Advocate informed his superiors at the office of Inmate Advocacy of the court's decision. By letter dated July 25, 1985, the Public Advocate informed the Court that while it had deleted terms of the proposed order which would govern the anticipated conditions and practices to be maintained at the new jail, the advocate again asked the Court to reconsider its decision not to exercise jurisdiction over the conditions at the new facility. Letter of T. Garry Mitchell to this Court dated July 28, 1985. Thereafter, the Public Advocate similarily advised the Special Master that it was his position that the previous consent agreements were directed at the practices of the defendants and not merely at the physical plant of the existing jail. Letter of Gerald Bosewell to Sidney Schreiber, dated August 20, 1985. By letter dated October 1, 1985, Mr. Bosewell forwarded the modified proposed second amended consent judgment to this Court and requested that a hearing be held at which time the Public Advocate would seek the Court's acceptance of this consent judgment. *See* letter of Gerald Boswell to this court dated October 1, 1985. In response, the Special Master informed the Court that it was still his position that

> [t]here is nothing before the Court concerning the conditions at the proposed new jail that is under construction. None of the pleadings or allegations in this case refer to even the possibility that

any of these practices might occur in the new jail.

Letter of Sidney Schreiber to this court, dated October 17, 1985. On this basis, the Master recommended that the Court delete any reference to sanctions with respect to events that may transpire at the new facility.

In response, I informed the parties that [a]fter carefully considering the proposed Second Amended Consent Order, I have concluded that it should not encompass conditions at the new county jail facility.

*See* Letter of this Court to Audrey Bomse, Esq., dated April 1, 1986.

On May 22, 1986, the Second Amended Consent Judgment was filed. The document reveals, *inter alia,* that

The parties agree further that this Second Amended Consent Judgment shall set forth some specific present and future obligations, responsibilities and capabilities of the County defendants with regard to policies and practices involved in the operation and management of the existing jail and the new county jail.

Second Amended Consent Judgment at ¶ 4. The consent agreement further provided that

14. In order to insure that certain prior policies and practices which were the subject of plaintiffs' complaint do not reoccur and to insure continuing compliance with the remedial services and programs to which the plaintiff class is entitled to under the 1982 Consent Judgment and 1983 Amended Consent Judgment, the county defendants agree to provide the following programs and services to all inmates who will be housed at the new county jail facility, within 60 days of the use of the new jail by the county. These services and programs are intended to supplement the regular programs and services which the county may otherwise be legally obligated to provide in accordance with state statutes and regulations, or state court orders.

*Active recreation*

(a) The county defendants shall provide each inmate with an opportunity for a minimum of *two* hours of exercise and active recreation daily. This opportunity for exercise and recreation shall be provided in either the outside (roof) recreation area or the indoor gymnasium. The recreation areas shall be equipped with sufficient exercise equipment or facilities to ensure adequate exercise to all inmates moved to the areas.

*Passive recreation*

(b) The county defendants shall establish and maintain a program of passive recreation for inmates in each jail housing unit, including but not limited to, television programming which provides each unit with the ability to, at a minimum, choose from a selection of general broadcast channels and cable channels for news, public affairs, sports, movies, music and other entertainment.

*Reading Materials*

(c) The county shall provide inmates with daily access to and the ability to order newspapers, magazines, and paperback books. The purchase of individual copies of these items shall be paid for by inmates out of their commissary accounts. The jail's library, however, shall maintain copies of local and state circulation newspapers and magazines, with the cost of library copies to be the responsibility of the county.

*Law Library*

(d) The county shall establish and maintain a law library based upon the recommended maximum list for a law library for New Jersey County Jails distributed by the New Jersey State Library. The County shall also prepare and circulate a schedule for inmate access to and use of the law library. The schedule shall provide for daily access and use by all inmates.

*Visits*

(e) A program for contact visits shall be instituted at the new jail and shall be governed by a written policy which will be made available to all inmates upon admission to the jail. The contact visit policy will contain procedures which will be designed to assure that inmates are provided the maximum opportunity to en-

gage in contact visiting while still assuring the orderly and secure conduct of the program. The county further agrees that the contact visit program shall at a minimum provide each inmate housed at the new jail with the opportunity for a weekly contact visit of thirty minutes in duration.

(f) The county further agrees to establish and maintain a non-contact visitation schedule at the new jail which shall provide a minimum of four visits per week at 20 minutes per visit to a maximum of four visits per week at 40 minutes per visit. Under no circumstances shall the visiting schedule be reduced and the county shall make a good faith effort to reach the maximum duration of each visit. In addition, the county agrees to maintain a visitation schedule at the new jail which, at a minimum, continues existing days and hours, including 12 hours for visitation on both Saturdays and Sundays and a program of evening visitation hours on at least two weeknights for at least three hours each night.

*Monitoring and Inspection*

18. Effective upon the date of this Second Amended Consent Judgment and for five years thereafter, plaintiffs counsel shall have the right, upon reasonable notice to the defendants, to monitor conditions of the new jail to ensure compliance with the provisions of this agreement. This right shall not be interpreted to in any way limit the existing rights of plaintiffs' counsel, upon reasonable notice to the defendants, to monitor conditions at the existing jail and to ensure compliance with this agreement, the consent judgment and amended consent judgment, until the County ceases to maintain or use the sixth floor facility as a jail. Plaintiffs' counsel shall also have the right to review documents requested in advance and make copies thereof. This provision shall not be interpreted to in any way limit such other rights plaintiffs' counsel may have in relation to the class or these proceedings. This right

may be temporarily suspended during periods of emergency determined by the Warden but in no case shall any period of suspension exceed 96 hours.

*Sanctions for Non–Compliance*

19. The County defendants recognize the findings of the Special Master and the concerns of the plaintiffs with certain requirements of prior consent judgments in this case and therefore agree to the automatic imposition of the sanctions [listed in subsections (a), (b), (c), (d), and (e) of ¶ 19] for a failure to comply, except with paragraph 14, with the terms of this second amended consent judgment …

Following the entry of the consent order, on December 23, 1986, the plaintiff class once again requested that this Court enter an order to show cause why fines should not be imposed. On January 28, 1987, monetary sanctions were imposed in the amount of $222,400. Additional fines were sought on June 15, 1987 and were ultimately imposed on July 20, 1987 in the amount of $250,000.00.[2] The County defendants filed an initial and an amended notice of appeal with the Court of Appeals for the Third Circuit on July 27, 1987 and August 3, 1987, respectively. The appeal was dismissed for failure to prosecute on August 27, 1987.

On or about March 7, 1988, the certification of Frank Senatore, Undersheriff in the County of Camden and administrator of the Camden County Correctional Institution was filed. By way of his certification, dated February 29, 1988, the Court was informed that the Camden County Correctional Facility, located at 310 Federal Street, Camden, had opened and thereby replaces the old Camden County Jail, located on the sixth floor of the Camden County Courthouse, as well as Jail House Annex.

Presently before the Court is the Court's *sua sponte* order to show cause why the pending action, commenced to a redress alleged constitutional wrongs with respect to the conditions once present in the now

---

2. By Consent Order filed April 6, 1988, the parties agreed that the balance of the money collected as a result of these sanctions be disbursed to the monitor of the fund and the County of Camden.

closed Camden County Jail, should not be dismissed.

At the hearing on the adjourned returned date of the order to show cause, conducted June 3, 1988, the Special Master indicated that he had "come to change [his] mind" on this issue as the "case turned into something more during the course of these proceedings than simply whether or not the sixth [floor] jail was overcrowded.... It developed into a situation where various practices were involved" with respect to visitation, medical services, access to the law library and recreational opportunities. Continuing he stated:

> So that the case ... justified the judgment which was agreed to by all parties and set forth in [paragraph 14] of the second amended consent judgment. In there it's quite clear that recognition is made of the new jail and that ... as the judgment says, "in order to ensure that certain prior policies and practices, which were the subject of the plaintiff's complaint, do not recur and to ensure compliance with the remedial services and programs which the plaintiff class is entitled under the consent judgment, the county defendants agreed to provide the following programs and services to all inmates who will be housed at the new county jail facility."
>
> And then it goes on and spells out programs for active recreation, passive recreation, the reading materials, the law library, visitation, contact visitation, non-contact visitation and provides that the county will maintain logs with respect to visitation. And also goes on to provide in a subsequent paragraph that the plaintiff's counsel have the right, upon reasonable notice, to monitor conditions at the new jail in order to ensure compliance with the provision of this agreement.

Transcript of Proceedings, dated June 3, 1988 at 9–10. In addition to the parties' expressed recognition that this case also involves the practices of the defendants and as the scope of the pleadings support the Court's enforcement of the provisions of the parties' voluntary settlement, the Master notes that the Court, as part of its remedial power, which is broader in this instance than the scope it has when it has found violations following litigation, may exercise its jurisdiction to ensure that certain conditions do not reappear or continue. The Master further recognized that the implementation and need for this sort of relief in complex litigation "usually grow out of the facts underlying the original lawsuit." *Id.* at 13. Finally, the Master, citing *Ramos v. Lamon,* 639 F.2d 559 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), asserts that the Court may consider the practices at a new jail, particularly where the construction of the facility is relevant in devising the appropriate remedy to rectify the challenged practice.

The Public Advocate agrees with the Master that this case evolved from an overcrowding case into one that involves the practices and policies of the county defendant and its agreement to undertake certain obligations with regard to the policies and practices present in the new jail. The advocate asserts that these subsequent developments are tantamout to an amendment of the original pleading. Plaintiffs argue that since the remedial objectives of the second amended consent judgment, which plaintiffs claim pertain to the policies and practices of the Camden County defendants, have not been achieved, the court must retain jurisdiction to enforce the decree as it regulates such practices of the defendants, notwithstanding the construction of the new facility. The Public Advocate argues that the opening of the new facility does not warrant dismissal of an action where relief had been ordered at the previously used facility, especially as the problems at Camden County are not purely physical ones that could be remedied simply by constructing a new facility. Rather, plaintiffs argue that the action is also aimed at changing the "actions and attitudes of public officials" *see* Brief of the Public Advocate, dated May 10, 1988, at 16, and that as the consent judgment is addressed to such issues, the Court should exercise its jurisdiction to enforce its terms. The failure to do so, the Public

Advocate argues, will result in the initiation of a new action "simply to enforce promises already made by the defendants and upon which the court has placed its imprimatur." *Id.* at 26. Finally, plaintiffs argue that unless the Court continues to exercise jurisdiction over the within consent judgment and case, unconstitutional conduct of defendants will continue and the plaintiffs' confidence in the power to resolve further disputes without extensive litigation will be lost.

The county defendants vigorously object to the Court's continued exercise of jurisdiction over this matter and argue that the pleadings address only the conditions of the now closed sixth floor jail. As the structure in which the alleged conditions were found no longer exists, defendants argue that there is no longer a complained of structure over which the Court has jurisdiction. In addition, the County argues that although the second amended consent judgment sets forth programs and procedures to be followed at the new jail, the Court's deletion of any penalty for failure to abide by the agreement reflects the Court's own recognition that it lacked jurisdiction over the new facility. In addition, the county asserts that absent a thorough examination of the conditions of the new facility, the Court cannot make any findings of unconstitutionality and therefore can not order a remedy. Thus the second amended consent judgment represents an agreement between the parties to confer extra benefits on the inmate class above those required by law and does not involve constitutional concerns. Thus, the failure to comply with the terms therein constitutes only a breach of contract over which the Court lacks subject matter jurisdiction to resolve. Rather, the county argues that this contractual dispute should be resolved in the state courts, particularly since that forum is sensitive to the issues which impact on the conditions of the facility, such as sentencing, bail, and prosecution of crimes. Moreover, the county defendant asserts that the parties cannot confer jurisdiction on the court by consent.

Finally, at the hearing, the State defendant stated that since the State did not sign the consent judgment at issue, the State believed that it was not in a position to argue about the county's obligation under the order. The State defendant did state, however, that as a matter of law it agreed with the county that the case should be dismissed as the court lacked jurisdiction over the practices at the new jail. Transcript of Proceedings, dated June 3, 1988, at 40.

## III DISCUSSION

The issue before the court now, as it was in July of 1985, is whether or not this Court has subject matter jurisdiction to continue to enforce the existing consent judgment to the extent same addresses the practices of the county defendants in the new facility. As noted in my review of the procedural history of this case, in 1985, this Court questioned its continuing subject matter jurisdiction with respect to the new facility and decided at that time that such an exercise of the jurisdiction of this Court would be inappropriate. After reading the pertinent case law and the pleadings in this matter, however, I am persuaded that I was in error and for the reasons set forth *infra,* I have concluded otherwise.

In *United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971), the Supreme Court described consent decrees as follows:

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus, the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties

have the bargaining power and skill to achieve.

(footnote omitted). Elsewhere, the Supreme Court has stated that

> [C]onsent decrees and orders have attributes both of contracts and of judicial decrees, ... while they are arrived at by negotiation between the parties and often admit no violation of law, they are motivated by threatened or pending litigation and must be approved by the court....

*United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975). *Accord Local No. 93 v. City of Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 3074, 92 L.Ed.2d 405 (1986).

While the construction of a consent decree is essentially a matter of contract law, the decree itself must be treated as judicial act, and not as a contract. *Pope v. United States*, 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944); *United States v. Swift*, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *Citizens for a Better Environment v. Gorush*, 718 F.2d 1117, 1125 (3d Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); *Philadelphia Welfare Rights Org'n v. Shapp*, 602 F.2d 1114, 1119 (3d Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980). Furthermore,

> The power of the court to enter a consent decree emanates from its authority to adjudicate the rights of the parties in the first instance.

*Lasky v. Continental Products Corp.*, 804 F.2d 250, 254 (3d Cir.1986). Thus, the court must have the power to resolve the case in which it renders judgment and therefore it may not extend its jurisdiction over matters beyond the scope of authority extended to the court by Congress. *Page v. Schweiker*, 786 F.2d 150, 154–6 (3d Cir. 1986) (Garth, J., concurring).

Hence,

> "the consent decree must spring from and serve to resolve a dispute within the court's subject matter jurisdiction. Consistent with this requirement, [the district court has an independent obligation to determine that, as a matter of subject matter jurisdiction, the terms of the decree] 'com[e] within the general scope of the case made by the pleadings,' ... and must further the objectives of the law upon which the complaint was based."

*Local No. 93, supra*, 106 S.Ct. at 3077, *quoting Pacific R. Co. v. Ketchum*, 101 U.S. 289, 297, 25 L.Ed. 932 (1880); *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); *Sansom Committee v. Lynn*, 735 F.2d 1535, 1538 (3d Cir.), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984).

In addition to the law which forms the basis of the claim, the parties' consent animates the legal force of a consent decree [3] and therefore, "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after trial." *Local No. 93, supra*, at 3076. As the court may provide such broad relief, it may enter a consent decree without first finding that a statutory violation has occurred. *Gorush, supra*, at 1125, *citing Swift, supra*, 286 U.S. at 327. Thus, caselaw which requires the court to tailor relief sufficient to correct the violations found is inapplicable here. *See Kendrick v. Bland*, 659 F.Supp. 1188, 1191 (W.D.Ky. 1987), *aff'd mem.*, 843 F.2d 1392 (6th Cir. 1988); *Union County Jail Inmates v. DiBuono*, 713 F.2d 984 (3d Cir.1983). Rather, the court should consider the pleadings as well as the parties' intent at the time the decree was drafted with respect to the court's continued exercise of jurisdiction. *Kendrick, supra*. Thus, to determine whether or not the court has the power to enforce the decree at the issue, the court must first find that the terms of the decree come within the general scope of the case made by the pleadings and second that the pleadings state a claim over which a feder-

---

**3.** It is the agreement of the parties, rather than the force of law upon which the complaint was originally based, that creates the obligations in a consent decree. *Local No. 93, supra*, 106 S.Ct. at 3076.

al court has jurisdiction. *Sansom Committee, supra,* at 1538; *Pacific R. Co., supra,* at 297.

Rule 7 of the Federal Rules of Civil Procedure provides that the pleadings in a case include the complaint, answer, and reply to any crossclaims, counterclaims or third party complaints. Fed.R.Civ.P. 7; C. Wright & A. Miller, *Federal Practice & Procedure,* § 1203 at 66; 2A Moores Federal Practice ¶ 805. In this case, the pleadings include the complaint and the answers of the various defendants. Specifically, the complaint alleges that

> Camden County Jail is dangerously overpopulated, resulting in an atmosphere of tension, fear and hostility, and interfering with supervision, protection and provision of housing, living space, necessities and services to the members of the plaintiff's class. Plaintiffs further contend that the totality of conditions resulting from the overcrowding at the Camden County Jail, particularly the serious inadequate provision of living space, sanitary facilities and visitation, the absence of inmate classification and any area or opportunity for exercise and recreation and religious services, and the deterioration of the jail's ability to deliver medical services, provide security, and adhere to proper disciplinary procedures.... Plaintiffs further contend that these conditions *and other practices or policies* violate the plaintiff class' right to due process of law, to equal protection of law and to be free from cruel and unusual punishment.

*See* Complaint, filed June 17, 1982, at ¶ 1 (emphasis added). The body of the complaint describes actions of the Department of Corrections, the population and living space at Camden County Jail as well as the impact of overcrowding on living conditions, recreation, activities, classification, visitation, telephone facilities, access to courts, health, sanitation and safety, medical and dental care, religious services and disciplinary and grievance procedures.

Continuing, the complaint alleges that

> 143. The *aforesaid conditions and practices* are known to the defendants, their agents and their employees, but these *conditions and practices* have been allowed to continue and to become worse without a concerted effort to bring about their elimination or correction in a manner that would provide timely relief for those plaintiffs who have and will continue to suffer from these *conditions and practices.*
>
> 144. The aforesaid *conditions of life and official practices* are allowed to continue and are imposed by defendants under color of law of the State of New Jersey.
>
> 145. There is an actual controversy between plaintiffs and defendants in that the defendants allow the *conditions and practices* above described to continue unimpeded and uncorrected, and the plaintiffs and the class they represent have no adequate remedy at law, thus making injunctive and declaratory relief appropriate.

(emphasis added). Plaintiffs contend that these conditions and practices fail to comply with the mandate of the first, fourth, fifth, ninth and fourteenth amendments of the United States Constitution and therefore plaintiffs state a claim for relief pursuant to 42 U.S.C. § 1983 that this Court may provide pursuant to 28 U.S.C. §§ 1331, 1334 and 1343(a)(3), (4). In its prayer for relief, the plaintiff class requested, *inter alia,*

> That this Court retain jurisdiction of this action until the Court is satisfied that the *conditions, practices and procedures* complained of herein are eliminated at the CCJ and that provision will be made so that such *conditions, practices, and procedures* will not be allowed to reappear in the future.

(emphasis added). Construing these pleadings "so as to do substantial justice," Fed. R.Civ.P. 8(f), it is clear that the plaintiff class challenges the physical conditions at the old jail as well as the practices and procedures of the defendants. The hearings conducted by the Master further reveal that this case is not simply a challenge to the overcrowded conditions and effects same had at the old jail. Rather, the mat-

ter "developed into a situation where various practices were involved." Transcript of Proceedings dated June 3, 1988 at 9. Hence, the suit is not solely "directed at the physical stones of the old jail, ... but at the policies through which these defendants operated the jail facilities." *Campbell v. McGruder*, 580 F.2d 521, 544 (D.C.Cir. 1978).

Moreover, the four corners of the consent judgment[4] reflect the parties' recognition that such practices are at issue in this case. The terms of the decree reflect the parties' agreement to "set forth ... future obligations ... of the County defendants with regard to policies and practices involved in the operation and management of the ... new jail," Second Amended Consent Judgment at ¶ 4, and the parties desire to "ensure that certain policies and practices *which were the subject of plaintiffs' complaint* do not reoccur ..." *Id.* at ¶ 14 (emphasis added). As the parties have viewed the scope of the pleadings and the case as, *inter alia*, a challenge to the practices of the defendants, the Court's decision to do likewise is consistent with their intent. *See Hooten v. Jenne*, 786 F.2d 692, 694 n. 3 (5th Cir.1986).

Hence, as the scope of the pleadings state a claim under various amendments to the constitution and 42 U.S.C. § 1983 and as the terms of the decree with respect to practices, which plaintiffs contend implicate such federal concerns, are "within the general scope of the case made by the pleadings," the court has the power to enter and enforce[5] the Second Amended Consent Judgment as it applies to the new facility. As the relief embodied in the consent decree in this regard comes within the general scope of the pleadings, this court is not acting as "a roving commission to impose upon the correctional institutions of New Jersey its own notions of enlightened policy." *DiBuono, supra* at 1007. *See*

*also Sansom Committee, supra* at 1544 (Becker, J., concurring) in which Judge Becker stated that the existence of a federal statutory or constitutional issue does not give a federal judge a roving commission to adjust all disputes between the parties. Rather, enforcement of the decree at issue advances the interests of both the parties and the public by facilitating the swift resolution of matters of constitutional magnitude.

Hence, while federal courts ordinarily adopt "a broad hands off attitude toward problems of prison administration," this doctrine gives way when the constitutional rights of prisoners are *threatened* or violated. *Meachum v. Fano*, 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); *Procunier v. Martinez*, 416 U.S. 396, 404, 406, 94 S.Ct. 1800, 1807, 1808 (1974); *Kendrick v. Bland*, 586 F.Supp. 1536, 1537 (W.D.Ky.1984). As the Supreme Court stated in *Procunier, supra* 416 U.S. at 406, 94 S.Ct. at 1808,

> A policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional *claims* whether arising in a federal or state institution when a prison ... practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. (emphasis added).

*See also Colorado River Water Conservation v. United States*, 424 U.S. 800, 816, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976) in which the Supreme Court recognized that a federal court has an unflagging right to exercise jurisdiction over a matter if constitutional rights are implicated.

In this case, the pleadings assert constitutional claims with respect to, *inter alia*, the practices of the defendants. A modification in the situs where such conduct occurs does not rob this court of jurisdiction.

---

**4.** As the Supreme Court states in *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 575, 104 S.Ct. 2576, 2586, 81 L.Ed.2d 483 (1984), "the scope of a consent decree must be discerned within its four corners and not by reference to what might satisfy the purposes of one of the parties or what might have been written had the plaintiff established factual claims and legal theories in litigation." (citations and quotation marks omitted).

**5.** Of course, a court of equity should not issue an order it cannot enforce. *SI Handling System Inc. v. Heisley*, 753 F.2d 1244, 1266 (3d Cir. 1985).

In fact, a change in conditions, defendant's promise to conform to plaintiff's wishes, the voluntary cessation of illegal conduct, or the destruction of the situs at which the conduct allegedly occurred "does not deprive the tribunal [the power] to hear and determine the case" nor do these events moot out a case that is alive at its inception. *Battle v. Anderson,* 708 F.2d 1523, 1536 (10th Cir.1983), *cert. dism'd,* 465 U.S. 1014, 104 S.Ct. 1019, 79 L.Ed.2d 248 (1984), *citing, United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Garrity v. Gallen,* 522 F.Supp. 171, 226 n. 166 (D.N.H.1981), *citing W.T. Grant, supra.* Moreover, such events do not assure that old practices are not reinstated. *Jones v. Diamond,* 636 F.2d 1364, 1375 (5th Cir.1981), *cert. dism'd,* 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993 (1981). Although the construction of a new jail is relevant in fashioning an appropriate remedy for constitutional violations that may exist, *Ramos v. Lamm, supra* at 586 and although the new facility may temporarily eliminate problems, such as overcrowding, the new structure itself may merely provide new housing for problems that were present at the old jail. *Palmigiano v. Garrahy,* 443 F.Supp. 956, 984 (D.R.I.1977); *Jones v. Wittenberg,* 440 F.Supp. 60, 68 (N.D.Ohio 1977).

Hence, it is in the interest of the parties and the public, *see Gorush, supra* at 1125, for this court to continue to exercise jurisdiction over this matter. The implementation of broad remedial relief is common in prisoner's right cases and is necessary to protect the rights at stake here and necessary to secure the parties' agreement that such interests are not threatened at the new facility. *See Samson Committee, supra* at 1544–45 (Becker, J., concurring). On balance, the benefits of continued supervision over this matter is proper and advances significant federal interests in protecting federal constitutional rights, which, in this instance, outweigh the contrary contentions of the county defendants. *See id.* at 1543 n. 5 and 1544.

Thus, for all of the above reasons, I find that this Court has the authority to exercise subject matter jurisdiction over this matter and therefore it is within the broad equitable power of this Court to enforce the Second Amended Consent Decree. as it applies to the policies, procedures, and practices of the county defendants at the new jail.

An order in conformance with this opinion has been filed by the Court.