Barry A. MILES, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Frank KONVALENKA, Asst. Warden D. Clark, Supt. Gilberto Romero, and Certain Unknown Prison Canteen Workers, Defendants.

No. 92 C 2407.

United States District Court,
N.D. Illinois, E.D.

May 22, 1992.

Barry A. Miles, pro se.

### ORDER

NORGLE, District Judge.

Before the court are Barry Miles's ("plaintiff") motions to file his *pro se* complaint without paying the filing fee, to proceed *in forma pauperis,* and for appointment of counsel. As stated below, the court finds no legal basis for the claims and dismisses the action with prejudice. Therefore, the court denies these motions as moot.

## FACTS

Plaintiff is an inmate at the Joliet Correctional Center in Joliet, Illinois. His two-count complaint alleges violations of 42 U.S.C. § 1983. Count I alleges that on January 30 plaintiff was confined in the segregation unit.[1] On that afternoon, canteen workers were serving lunch to the segregation unit inmates in cells numbered 402 through and including 426.[2] All the food for this group of cells comes from the same source. Shortly after all the trays were served by "the preacher," the inmate in cell 402 noticed his tray had a dead mouse in the entrée. All 25 trays were returned and the rodent was given to Assistant Warden Clark. Several prison officials and canteen workers immediately investigated the incident. Two paramedics treated all exposed prisoners. Two hours later, hamburgers, coleslaw, and tater tots were served. In Count II, plaintiff complains that coffee was not served to members of his unit, although inmates in the rest of the prison did receive coffee. This, he contends, violated the Equal Protection Clause of the Fourteenth Amendment and constituted cruel and unusual punishment. For these violations, plaintiff seeks $50,000 in compensatory damages and $25,000 in punitive damages. Although plaintiff admits he has not exhausted his administrative remedies, this is no longer a basis for dismissal when the complaint only seeks monetary damages. *McCarthy v. Madigan*, — U.S. —, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Plaintiff's stated reason for not following the grievance procedure is that it is "a joke" and doing so would be futile. He presently seeks waiver of the filing fee, leave to proceed *in forma pauperis*, and appointment of counsel.

## DISCUSSION

Before the court considers whether plaintiff's motions should be granted, the court will determine whether they have a sound legal basis.

## I.

The Eighth Amendment, as applied to the States via the Due Process Clause of the Fourteenth Amendment, prohibits prison officials from inflicting "cruel and unusual punishments" on inmates. The Supreme Court has recently clarified which standards apply when a court reviews an Eighth Amendment claim. The test has both an objective and subjective component. *Wilson v. Seiter*, — U.S. —, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (objective component) and *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (subjective component)). The objective component examines the gravity of the alleged deprivation. *Hudson v. McMillian*, — U.S. —, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). Thus, it poses the question, was the deprivation serious enough? *Wilson*, 111 S.Ct. at 2324. Not every deprivation will give rise to a federal case. Inmates must tolerate some inconvenience and discomfort in their accommodations. *Id.* at 2327. However, punishment such as torture or burning at the stake violate any standard of decency. *James v. Milwaukee County*, 956 F.2d 696, 698–99 (7th Cir.1992). The typical case falls somewhere in the middle. In such a case, the inmate must show that the deprivation was extreme to state a claim. *Hudson*, 112 S.Ct. at 1000.

The subjective component looks at the state of mind of the prison officials alleged to have violated plaintiff's rights with cruel and unusual punishments. *Wilson*, 111 S.Ct. at 2324. Intent is the cornerstone of the word punishment. *Id.* at 2325 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.) (Posner, J.), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). Consequently, only wanton conduct amounts to cruel and unusual punishment. *Id.* 111 S.Ct. at 2325–26. The standard is

---

**1.** The year is not specified in the complaint. Given the court's disposition of the matter on other grounds, the court will assume the claims were timely filed.

**2.** Although plaintiff does not specifically state he resided in one of these cells, the court will assume as much.

not a fixed peg upon which an inmate can try to hang his cause of action, but depends on " 'the kind of conduct against which an Eighth Amendment objection is lodged.' " *Wilson*, 111 S.Ct. at 2326 (quoting *Whitley*, 475 U.S. at 320, 106 S.Ct. at 1084). The mental state necessary to "be characterized as 'wanton' depends upon the constraints facing the official" at the time. *Id.* The question posed here is, therefore, did the officials act with a sufficiently culpable mind? *Id.* 111 S.Ct. at 2324. In a prison conditions case such as this, the standard is deliberate indifference. *Id.* at 2327.

■ First, the objective component. Here, plaintiff alleges discovery of a mouse in the victuals of a fellow inmate. Learning that vermin were used in preparation of one's meal would disturb almost anyone. However, plaintiff does not allege that he (nor anyone else for that matter) consumed the tainted food, that he required treatment by the paramedics dispatched to the area, or that he became sick or nauseated. Thus the deprivation to plaintiff was minimal at most.

Plaintiff's claim also fails on the subjective component. Here, plaintiff must show that prison officials acted with deliberate indifference. *Wilson*, 111 S.Ct. at 2327. Deliberate indifference means that the prison officials disregarded a risk of danger so substantial that knowledge can be inferred from that conduct. *James*, 956 F.2d at 700.

The conduct of defendants does not meet the deliberate indifference standard. There is no indication that officials knew of any severe infestation problem in the prison kitchen. *But see Johnson v. Lane*, Nos. 82 C 158, 82 C 3686, 82 C 5362, 82 C 5438, 1986 WL 7944 (N.D.Ill. July 3, 1986) (noting problem). But even if there were notice, defendants reacted promptly, supplied medical assistance to those who required it, and provided substitute meals in a timely manner. This evidence, especially when considering the relatively minor deprivation, does not meet the standard of deliberate indifference to state an Eighth Amendment claim.

## II.

■ Plaintiff also alleges that prison officials deprived him of coffee with his morning meal in violation of his Equal Protection rights. The Equal Protection Clause provides a cause of action to any citizen of the United States. *Collins v. City of Harker Heights*, —— U.S. ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992) (analyzing a § 1983 claim). Any equal protection analysis begins with a determination of whether a suspect class or a fundamental right is implicated in order to determine the scrutiny under which the law is examined. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir.1990). Prisoners are not a suspect class for Equal Protection purposes nor is any other suspect class apparently invoked here, including coffee drinkers. *Id.* And, although many people need their morning coffee, not even the most earnest java junkies could support a claim that they have a fundamental right to consume their morning brew.

Therefore, the court examines the deprivation of coffee under the rational relationship test. This test is not a stringent one. *See Gregory v. Ashcroft*, —— U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (upholding mandatory retirement of judges based on rational relationship test). As long as the law, regulation, or policy has some rational relationship to a legitimate penalogical goal, the law must be upheld. *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). Inmates do not however surrender their right to equal protection under the laws at the jailer's door. *Williams v. Lane*, 851 F.2d 867, 871 (7th Cir.), *cert. denied*, 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989).

■ Plaintiff complains that he and others in the segregation unit of the prison were not permitted to have coffee with their meal while inmates in the rest of the prison were. Thus there is an apparent discrepancy in the treatment of two classes of inmates: those in segregation and those who are not. The question becomes wheth-

er there is a rational reason for this differentiation.

Inmates in segregation are frequently the most dangerous of the prison population. Very often these inmates have violated prison rules and those violations require disciplinary action. Segregation from the rest of the prison population is often the result. These same inmates cannot have coffee. This deprivation could be rationally related to the legitimate penalogical goals of maintaining discipline and prison safety. Hot coffee could conceivably serve as a weapon to inflict pain on fellow inmates, prison guards, or even on the segregated inmate himself. This deprivation is rationally related to protecting the safety of all inmates. As a result, plaintiff cannot state a claim under an Equal Protection analysis either.

Furthermore, to suggest that denying some convicted felons coffee constitutes cruel and unusual punishment ignores that millions of persons in our society, in and out of jails, freely prefer not to drink coffee for a variety of reasons. Plaintiff's argument would fare no better discussing the absence of tea or whiskey. A complaint asserting a deprivation of water, on the other hand, would easily pass muster.

## CONCLUSION

There is no arguable legal basis for the complaint. Thus, this action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(d). Plaintiff's motions are denied as moot.

IT IS SO ORDERED.