Charles LILES and Daron
Josephs, Plaintiffs,

v.

CAMDEN COUNTY DEPARTMENT
OF CORRECTIONS, David S. Owens,
Jr., and Edward T. McDonnell, Defendants.

Civil Action No. 99–3311.

United States District Court,
D. New Jersey.

Oct. 1, 2002.

Lawrence S. Lustberg, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, Philip G. Gallagher, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York, NY, for Plaintiffs, Charles Liles and Daron Josephs.

Frederick J. Schuck, County Counsel, Donna M. Whiteside, Assistant County Counsel, Office of Camden County Counsel, Camden, NJ, for Defendants, David S. Owens and Edward T. McDonnell.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION

Two former inmates bring constitutional challenges to the conditions of their con-

finement at the Camden County Correctional Facility ("CCCF"). This is not the first time the CCCF has been the subject of federal litigation. United States District Judge Harold A. Ackerman presided over an action against CCCF that was originally filed in 1982. *See Camden County Jail Inmates v. Parker*, 123 F.R.D. 490, 491 (D.N.J.1988). As part of these proceedings, Judge Ackerman appointed former New Jersey Supreme Court Justice Sidney M. Schreiber as a Special Master. In his capacity as a Special Master, Justice Schreiber produced three reports describing the conditions at CCCF. Relevant portions of Justice Schreiber's reports as a Special Master will be cited throughout this Opinion.

In their original *pro se* Complaint, Plaintiffs Charles Liles ("Liles") and Daron Josephs ("Josephs") allege a number of inadequate prison conditions that violated their Eighth Amendment rights. Defendants, Warden David S. Owens ("Owens") and Freeholder Edward T. McDonnell ("McDonnell")[1], move for summary judgment on the Complaint filed against them. Only one of Plaintiffs' claims, alleging violence among inmates that broke out when urine splashed on inmates who slept on cell floors next to toilets, presents any genuine question of material fact. Thus, for the reasons set forth below, Defendants' Motion for Summary Judgment shall be granted in part and denied in part.

## II. FACTS AND PROCEDURAL HISTORY

### A. Incarceration of Liles and Josephs

Both Liles and Josephs were incarcerated at CCCF. Liles has spent time in CCCF on approximately five different occasions, *see* Tr. of Charles Liles Dep. 5/25/00 ("Liles Tr.") 58:23–25, most recently from September 1998 until September of 1999, *id.* 59:9–12. Josephs was incarcerated at CCCF from December 1997 to April 2000. *See* Pls.' 56.1 Statement at 3. Both Liles and Josephs allege that they were deprived of their constitutional rights during their incarceration at CCCF, based on:

(1) having to sleep on the floor of their cells on thin mattresses, which caused back pain, *see* Am. Compl. ¶ D; Liles Tr. 80:9–16; Tr. of Daron Josephs Dep. 1/29/02 ("Josephs Tr.") 42:5–9, 43:3 to 44:16;

(2) only receiving two sheets and one blanket, and not receiving a pillow, despite the cool temperature in CCCF cells, *see* Am. Compl. ¶ F; Liles Tr. 80:19–24, 104:22 to 105:8; Josephs Tr. at 74:17–25;

(3) having to take meals on dirty, "smelly" trays, *see* Am. Compl. ¶ G; Liles Tr. 80:25 to 81:6; Josephs Tr. 60:24 to 61:19;

(4) receiving spoiled food on one occasion, *see* Am. Compl. ¶ G; Liles Tr. 81:7–14, 87:1–13, 93:5 to 94:2; Josephs Tr. 61:20 to 63:10;

(5) having to use dirty showers covered in fungus that caused Plaintiffs to break out in rashes, *see* Liles Tr. 81:16 to 82:11; Josephs Tr. 49:17 to 53:8;

(6) receiving inadequate medical care, *see* Am. Compl. ¶¶ H, I; Liles Tr. 82:12 to 83:19, 143:15 to 146:21, 166:13–21; Josephs Tr. 64:1 to 67:7;

(7) having to sleep on the floor near the commode, such that plaintiffs were splashed by urine and water and awakened by the sounds of the toilet flushing, *see* Am. Compl. ¶ C;

---

1. On March 5, 2002, the parties signed a stipulation of dismissal against Defendant Camden County Department of Corrections. Owens and McDonnell are the only Defendants remaining in this action.

Liles Tr. 84:7–19, 114:22 to 116:11, 122:3 to 123:12; Josephs Tr. 31:25 to 32:9, 75:18 to 76:18;

(8) not getting adequate access to the law library, see Liles Tr. at 85:7–10, 136:21 to 139:15; Josephs Tr. 76:19 to 78:6;

(9) being subjected to a lockdown from June 1st to June 22nd of 1999, during which they were permitted to leave their cells for only twenty minutes a day, see Am. Compl. ¶ E; Liles Tr. 85:12 to 86:11, 129:13–18; Josephs Tr. 56:22 to 60:5;

(10) not having enough storage space for clothes, see Am. Compl. ¶ A; Liles Tr. 86:17–22; and

(11) not being allowed to send their blankets to a laundry service, which caused them to develop rashes and infections from fungus, see Am. Compl. ¶¶ B, J; Liles Tr. 147:3 to 148:13; Josephs Tr. 47:10 to 49:13.

## B. Procedural History

On July 29, 1999, Plaintiffs filed their first Complaint, which I dismissed for failure to state a claim. See Order, *Liles, et al. v. Camden County Dep't of Corr.*, Civ. A. No. 99–3311(SMO) (D.N.J. July 29, 1999). I granted Plaintiffs leave to file an Amended Complaint within thirty days, which Plaintiffs did on August 12, 1999. Because Liles and Josephs filed their Complaint *pro se*, I have liberally construed their Complaint, which is fashioned as a claim for relief under 42 U.S.C. § 1983 based on deprivations of their Eighth Amendment rights.[2] This court

has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343 (2002).

Defendants moved for summary judgment on the Amended Complaint on July 7, 2000. This Court denied the motion without prejudice on January 19, 2001. On that same date Lawrence Lustberg, Esq., of the law firm Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., was appointed as *pro bono* counsel to represent Liles and Josephs.[3] Defendants now move, pursuant to Fed.R.Civ.P. 56(c), for summary judgment on the Amended Complaint.

## III. STANDARD FOR SUMMARY JUDGMENT

The legal standard governing summary judgment is well–settled. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 2002); see also *Anderson v. Consol. Rail Corp: ("Conrail")*, 297 F.3d 242, 247 (3d Cir.2002). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Conrail*, 297 F.3d at 247 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it bears on an essential element of the plaintiff's claim. *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (citing *Anderson*, 477 U.S. at

---

**2.** Under Fed.R.Civ.P. 8(f) (West 2002), "All pleadings shall be construed as to do substantial justice." As explained in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 106, 97 S.Ct. 285 (internal quotations omitted).

**3.** This appointment was made pursuant to Appendix H of the Local Civil Rules of the District of New Jersey (Gann 2002). I thank Mr. Lustberg and Mr. Gallagher for their excellent advocacy on behalf of Liles and Josephs.

248–251, 106 S.Ct. 2505). Thus, to survive a motion for summary judgment, the party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suit. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995) (*citing Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505).

When considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In evaluating the evidence, the court must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002) (quoting *Bartnicki v. Vopper,* 200 F.3d 109, 114 (3d Cir.1999)); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Notwithstanding this deference towards the nonmovant, "[t]he mere existence of a scintilla of evidence in support of the [movant]'s position will be insufficient" to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Summary judgment is proper "if after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Conrail,* 297 F.3d at 247 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

■ After one party has filed a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor. *Groman,* 47 F.3d at 633 (*citing Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505). Moreover, "[w]hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).[4] "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

## IV. THE LEGAL STANDARD GOVERNING EIGHTH AMENDMENT CLAIMS

■ Because Liles and Josephs were convicted prior to their incarcerations at CCCF, the Eighth Amendment applies to their prison-conditions claims. Convicted inmates are protected by the Eighth Amendment from "cruel and unusual punishments." *See Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

In *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the United States Supreme Court articulated the following two-part test for determining whether an Eighth Amendment violation had been committed by a prison official based on inadequate prison conditions: (1) a sufficiently serious constitutional deprivation; and (2) deliberate indifference by the prison official-defendants. *Id.* at 834, 114 S.Ct. 1970; *see also Beers–Capitol v. Whetzel,* 256 F.3d 120, 130 (3d Cir.2001).

4. Local Civil Rule 56.1 of this Court also requires that, on motions for summary judgment, each side must submit statements identifying material facts as to which there does or does not exist a genuine issue. *See id.* (Gann 2002). "[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor,* 85 F.Supp.2d 391, 408 n. 26 (D.N.J.2000).

## C. Alleged Constitutional Deprivations

■ Under the first prong of the *Farmer* test, Liles and Josephs must demonstrate that they have suffered a "sufficiently serious" constitutional deprivation. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. This means that a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Thus, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). Prison conditions "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes* at 347, 101 S.Ct. 2392.

For the reasons that follow, I find that, of all the constitutional deprivations alleged by Plaintiffs, only one presents any genuine issue of material fact that can survive the Defendants' motion for summary judgment. I shall address each allegation in turn.

### 1. Condition of Sleeping Mattresses

■ Both Liles and Josephs were required to sleep on mattresses on the floors of their cells while incarcerated at CCCF. *See* Liles Decl. ¶ 2; Josephs Decl. ¶ 2. These mattresses were between two and two-and-a-half inches thick. *See* Liles Decl. ¶ 3. Liles developed lower back pain after about a month of sleeping with his mattress on the floor. *Id.* ¶ 4. Similarly, Josephs developed back pains "about three months after entering CCCF." Josephs Decl. ¶ 5.

■ While Liles and Josephs may not find their sleeping conditions to meet their needs, the Constitution "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349, 101 S.Ct. 2392. Neither Plaintiff has presented any evidence that their prison mattresses actually caused their back injuries. Indeed, Liles testified at his deposition that he never complained to prison officials about the pain he was experiencing, *see* Liles Tr. 97:6–10, and cannot offer any doctor's report in support of his claim, *see id.* 97:11–22. Likewise, Josephs has presented no evidence of causation, offering only one doctor's explanation for his back pain: "It could be the mats. It could be the beds. He said it could be the exercise, but it's nothing, nothing, you know, exact." Josephs Tr. 67:8–18.

Thus, because Plaintiffs have presented no evidence that their prison mattresses actually caused their back injuries, I find, on this summary judgment record, that there exists no genuine issue of material fact with respect to the discomfort allegedly caused by Liles' and Josephs' sleeping mattresses.

### 2. Inadequate Amount of Bedding Materials

■ Liles and Josephs allege that CCCF did not provide them with an adequate amount of bedding materials. CCCF inmates receive two sheets and one blanket, but no pillow. *See* Am. Compl. ¶ F. This allegation does not rise to the level of a sufficiently serious constitutional deprivation under *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Liles made use of the sheets and blanket that were given him, *see* Liles Tr. 116:12–15, and neither Plaintiff has demonstrated any harm resulting from the amount of bedding materials they received. As such, Liles and Josephs have presented no genuine issue of material fact

with respect to the amount of bedding materials they received.

### 3. Unsanitary Meal Service and Spoilage of Food

 Food is one of the basic needs that prisoners must receive under *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970. Liles and Josephs, however, do not allege that they were ever denied food—they allege that they were served food on trays that smelled and were given spoiled food on one occasion. *See* Am. Compl. ¶ G. The only basis for Liles and Josephs' conclusion that the food was spoiled was their own evaluation of the smell and taste of the food. Liles Tr. 93:12 to 94:11. On the occasion that they allege their food was spoiled, prison officials sent up a second batch of food, which plaintiffs also refused to eat. *See* Josephs Tr. 62:13 to 63:20. Instead, the prisoners on the cellblock pooled their commissary food resources and fed themselves. *Id.*

Even construing these allegations in a light most favorable to Liles and Josephs, as I must under Fed.R.Civ.P. 56(c), Plaintiffs' allegations of inadequate food service cannot support a claim under the Eighth Amendment. Plaintiffs allege they received spoiled food on only one discrete occasion, and Plaintiffs have provided no evidence that the CCCF food caused any physical illnesses, *see* Liles Tr. 96:8–13. Indeed, far more serious allegations relating to prison food have failed to support Eighth Amendment claims. *See, e.g., Miles v. Konvalenka*, 791 F.Supp. 212, 214 (N.D.Ill.1992) (dismissing prisoner's complaint alleging Eighth Amendment violation where dead mouse was found in meal). On this record, I must grant Defendants' motion for summary judgment with respect to meal service.

### 4. Unsanitary Shower Conditions

 Liles and Josephs argue that their Eighth Amendment rights were violated by the dirty and unsanitary CCCF showers, which allegedly caused them to break out in rashes. Josephs suffered from several different types of rashes while at CCCF, *see* Josephs Tr. 51:4–5, Josephs Decl. ¶ 4, which could have been caused by "a multitude of things," *id.* 49:18–19.

Plaintiffs have presented no evidence in support of this allegation, other than the report of their "forensic sanitarian," Dr. Robert W. Powitz. Even fully crediting Dr. Powitz's report, his conclusions are too hypothetical to create any genuine issues of material fact. Dr. Powitz reported, "the poor condition of the shower and lack of sanitation *may result* in the prisoners contracting dermatological diseases." Pls.' Br. in Opp'n to Mot. for Summ. J., Ex. K, at 5 (emphasis added). Without any evidence, however, of actual harm to Liles or Josephs caused by CCCF showers, Plaintiffs cannot demonstrate the existence of a serious constitutional deprivation redressable under *Farmer*. Again, absent any evidence that CCCF caused harm to Liles or Josephs, I must grant summary judgment with respect to this claim.

### 5. Inadequate Medical Care

 Liles and Josephs each allege they were provided with inadequate medical care. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Accordingly, the state is obligated to provide medical care to those whom it is punishing by incarceration. *See id.* Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *See id.* at 104, 97 S.Ct. 285.

Liles, who had a history of ulcers prior to arriving at CCCF, passed out in his cell at four in the morning. *See* Liles Tr. 143:24. He was seen by a prison nurse

and admitted to a hospital approximately three-and-a-half hours later. *See id.* 144:2–12. Liles was examined and received treatment for his condition, which was diagnosed as a flare-up of his ulcer. *See id.* 145:14 to 146:21.

On this record, there is no genuine issue of material fact with respect to CCCF's treatment of Liles' medical illness. CCCF did not act in a deliberately indifferent manner towards Liles. In fact, based on the facts as set forth by Liles himself, CCCF staff attended to him in a timely manner and sought out appropriate treatment for him at a hospital.

■ Josephs experienced an episode of severe back pain. Josephs Tr. 64:19–22. The CCCF officer on duty responded and escorted Josephs to the nurse on call. *Id.* 64:19 to 67:25. After Josephs waited for over two hours to see her, the nurse sent Josephs back to his cell with a direction to take a hot shower, but Josephs returned later that day presenting with the same symptoms. *Id.* 66:3 to 67:18. This second time, Josephs again waited for approximately two hours and was eventually treated by a doctor who gave him "some muscle relaxers and painkillers," *id.* 67:3–5, which "helped a lot." *Id.* 67:6.

■ On this summary judgment record, Josephs has presented no genuine issues of material fact with respect to CCCF's alleged indifference to his medical needs. He admits that he received medical treatment, which improved his condition. Josephs takes issue with the fact that he was initially told to return to his cell and take a hot shower, without even being given a Tylenol, *see* Josephs Tr. 65:16. I am not in a position to second-guess the medical judgment of the CCCF nurse on call. As the United States Supreme Court explained in *Estelle:* "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical

malpractice." *Id.,* 429 U.S. at 107, 97 S.Ct. 285. Thus, I must grant summary judgment on both Liles' and Josephs' claims of inadequate medical care.

**6. Inadequate Access to the Law Library**

■ During their depositions, Liles and Josephs each testified that they were not given adequate access to the law library. Liles included this in his list of items that violated his rights. *See* Liles Tr. 83:22 to 84:3, 84:22 to 85:5. Liles, however, has been allowed to use the CCCF library "[a]bout 21 times," Liles Tr. 142:11. Josephs testified that he was only denied access to the law library during lock-downs, *see* Josephs Tr. 77:20–24, and that even during lock-downs, he had some access to the law library, *id.* 78:3–6.

■ Basic needs that must be provided to individuals in confinement include food, clothing, medical care, and protection from violence. *See Farmer,* 511 U.S. at 832, 114 S.Ct. 1970. Limiting prisoners' access to the law library does not amount to a constitutional deprivation of such basic needs. Even ignoring the fact that Liles and Josephs never pleaded inadequate access to the law library in their Amended Complaint, the fact that both had access to the law library on multiple occasions presents no genuine issue of material fact that can survive summary judgment.

**7. Inadequate Laundry Service and Storage Space for Clothing**

■ Plaintiffs' Amended Complaint explains that they could "not use State laundry services because it does not adequately clean laundry." Am. Compl. ¶ B. Instead, Liles and Josephs handwashed their belongings and stored them in their cells, which allegedly caused them to become infected and contract rashes. *Id.*

The CCCF cannot be faulted if Plaintiffs chose not to use the State laundry service and instead attempted to dry their hand-washed clothing in their cells. Again, the Constitution "does not mandate comfortable prisons," *Rhodes,* 452 U.S. at 349, 101 S.Ct. 2392, and, moreover, laundry service is not one of the basic needs required under *Farmer.* Neither Plaintiff has identified any practice or policy of CCCF that caused their rashes and infections. Thus, with respect to laundry services and clothing storage, there is no genuine issue of material fact. Plaintiffs' refusal to use State laundry services did not violate their Eighth Amendment rights.

### 8. Extended Confinement During Lock-down

From June 1st to 22nd of 1999, Liles and Josephs, along with other CCCF inmates, were subjected to a "lock-down." See Am. Compl. ¶ E. During this lock-down period, Plaintiffs were confined to their cells with up to three other inmates and only allowed to spend twenty minutes outside of their cell to shower, use the bathroom, exercise, and make phone calls. *See* Liles Tr. 85:12–23. This lock-down went into effect because an inmate had tried to escape out of the CCCF roof, and the roof had to be repaired. *See id.* 85:12–14, 129:13–18; Josephs Tr. 57:19 to 58:10.

Courts have recognized that extended periods of lock-down can violate the Eighth Amendment. *See, e.g., Delaney v. DeTella,* 256 F.3d 679, 686 (7th Cir.2001) (six-month lock-down). Lockdown periods of less than thirty days, however, as experienced by Liles and Josephs, generally do not violate the Eighth Amendment. *See e.g., Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988) (twenty-eight days in segregation); *Caldwell v. Miller,* 790 F.2d 589, 601 (7th Cir.1986) (thirty days of twenty-four hour lockdown). In *Ebersole*

*v. Wagner,* No. Civ. A. 99–4526, 1999 WL 1241079, at *1 (E.D.Pa. Dec.20, 1999), the Court found no constitutional violation where a prison had six days of lock-down after a prisoner was able to escape from the facility because of a damaged sensor. The court explained that "[d]iscipline, such as lock-downs, by prison officials for misconduct 'falls within the expected perimeters of the sentence imposed by a court,' and therefore does not amount to a constitutional violation." *Id.* (citing *Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

Neither Liles nor Josephs has alleged that the twenty-two day lock-down caused them anything more than inconvenience and discomfort, which does not amount to a "wanton and unnecessary infliction of pain," *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392, violative of the Eighth Amendment. Thus, I must grant summary judgment in favor of Defendants with respect to Liles' and Josephs' lock-down claims.

### 9. Fighting Caused By Toileting Conditions

The only allegation in the Complaint that withstands Defendants' motion for summary judgment concerns the "fighting" that broke out after urine and water splashed on prisoners as they slept on the floors of their cells next to the toilets. Physical safety is one of the basic necessities of life to which prisoners are entitled. *See Farmer,* 511 U.S. at 832, 114 S.Ct. 1970.

The Amended Complaint alleges that fights broke out when inmates got splashed with urine as they slept on the floor near the toilets. Am. Compl. ¶ C. This allegation is supported by both Liles' and Josephs' testimony. Liles had at least two fights with other inmates at CCCF because other inmates had urinated on him. *See* Liles Tr. at 121:22 to 123:12.

**462**

Liles was struck several times during one of these fights. *Id.* 123:2–3. Similarly, Josephs testified that he fought with another inmate who splashed Josephs with urine. *See* Josephs Tr. 31:16 to 33:13. During this fight, Josephs was thrown into the toilet and suffered injuries to his chest. *Id.* 32:15 to 33:8. These incidents establish a pattern of violence that resulted from prisoners getting splashed with urine as they slept on mattresses placed on the floors of cells next to toilets. It is a question of fact whether these events constituted a threat to the health and safety of Liles and Josephs that violated the Eighth Amendment.

In *Blizzard v. Watson,* 892 F.Supp. 587 (D.Del.1995), the plaintiff was "awakened by urine splashing on his leg from a prisoner using the toilet near his bed." *Id.* at 591. On a motion for summary judgment, the district court dismissed all of the plaintiff-prisoners's claims, which alleged constitutional deprivations based on the conditions of his confinement. Unlike the *Blizzard* plaintiff, however, Liles and Josephs have alleged a serious risk of physical harm based on multiple incidents of fighting that resulted from urine splashing on sleeping inmates.

■ Apparently, fighting caused by inmate urination is not uncommon. The Third Circuit has offered some insight into this phenomenon, albeit in the context of pre-trial detainees [5], when it described "forcing detainees to sleep on mattresses placed ... on the floor adjacent to the toilet and at the feet of their cellmates" as "unsanitary and humiliating." *Union*

*County Jail Inmates v. Di Buono,* 713 F.2d 984, 996 (3d Cir.1983).

On this summary judgment record, there exists a genuine issue of material fact as to whether the fighting that broke out as a result of prisoners urinating on each other as they slept on the floors next to the toilets violated the Eighth Amendment. Thus, I must deny summary judgment on this claim.

**D. Whether Prison Officials Exhibited "Deliberate Indifference"**

■ Under the second part of the *Farmer* test, if an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, I must also determine if prison officials acted with "deliberate indifference" to the inmate's health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. There is enough evidence in the summary judgment record to create genuine issues of material fact as to whether Owens or McDonnell had actual knowledge of the fighting that broke out among inmates because they urinated on each other as they slept on mattresses on the floor.

**1. Standards for Liability of Prison Officials**

■ The test for "deliberate indifference" by prison officials in prison conditions cases is not an objective test of what a reasonable official in the same positions should have known, but a subjective test based on "what the prison official actually knew." *See Beers–Capitol,* 256 F.3d at 131. Under this test, a prison official "must both be aware of facts from which

---

**5.** "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535–36, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This is because "[a] person lawfully committed to pretrial detention has not been adjudged

guilty of any crime." *Id.* at 536, 99 S.Ct. 1861. Liles and Josephs, as convicted inmates, are afforded less protection under the Constitution than pre-trial detainees. The Eighth Amendment, however, still governs the conditions of their confinement.

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. However, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. 1970.

▆▆▆▆▆ A defendant's knowledge of a risk can be proved indirectly by circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *See Beers–Capitol*, 256 F.3d at 131 (citations omitted). Moreover,

> [I]f an Eighth Amendment plaintiff presents evidence showing that a *substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past*, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Farmer*, 511 U.S. at 842–43, 114 S.Ct. 1970 (emphasis added). Finally, "a prison official cannot escape liability by showing that he did not know that *this* particular inmate was in danger of attack." *Beers–Capitol*, 256 F.3d at 131.

▆▆▆▆ To survive summary judgment in a prison conditions case, a plaintiff "must come forward with evidence from which it can be inferred that the defendant-officials were at the time the suit was filed, and are at the time of summary judgment, know-

ingly and unreasonably disregarding an objectively intolerable risk of harm." *Beers–Capitol* 256 F.3d at 132 (citing *Farmer* at 846, 114 S.Ct. 1970).

▆▆▆ Supervisor-centered claims against prison officials are analyzed under the four-prong test set forth in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989).[6] Under the *Sample* test, to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Beers–Capitol*, 256 F.3d at 134 (citing *Sample*, 885 F.2d at 1118).

### 2. Owens' and McDonnell's Awareness of Fighting

▆▆▆ Warden Owens testified that he not only tours the cell blocks himself, but also receives letters from inmates detailing their grievances and hears reports from his subordinates. *See* Tr. of Owens Dep. 1/24/02 ("Owens Tr.") 40:23 to 41:25. Liles testified that he wrote eight or nine complaints to the warden. *See* Liles Tr. 150:12–24. These these facts alone do not demonstrate either Owens' or McDonnell's "actual knowledge" of the fighting, as required under *Beers–Capitol*. Two Special Master's Reports filed by Justice Schreiber in previous CCCF litigation, however, also make reference to the same conditions alleged by Liles and Josephs:

---

6. As explained in *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 n. 7 (3d Cir.2001), although *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989), was decided before *Farmer v. Bren-* nan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the *Sample* test for supervisor liability on deliberate indifference claims does not conflict with *Farmer*.

The lack of privacy manifested itself when an inmate awakes during the night to use the lavatory. The person sleeping on the mattress nearest to it frequently would wind up getting sprayed. *See* Pls.' Ex. G, *Special Master's Report on Overcrowding Conditions at Camden County Jail* 11/12/90, at 20. In the words of one CCCF undersheriff:

> You have a situation at night, they're locked in their cells, one individual in the cell may have to get up and relieve himself, urinate, the other guy may be sleeping with his head near that toilet, he's got to be wakened [sic] up and moved which may cause a problem or the other guy has to try and relieve himself without in anyway [sic] dripping on this guy or whatever. Because I mean let's face it, who wants to lay there and have somebody urinate on or splash you. It's very degrading, I guess, for lack of a better term.

*Id.* at 24–25.

This same report also mentioned regular incidents of violence among CCCF inmates created by the living conditions. *See id.* at 38. In another Special Master's Report filed by Justice Schreiber two years later in the same CCCF litigation, the following was reported:

> An inmate slept on the floor from March 26, 1989, until June 20, 1989. He testified that inmates forced to sleep on the floor by the toilet often got hit in the night when another inmate got up to go to the bathroom, even with only three inmates in a cell.

Pls.' Ex. H, *Supplemental Report—Camden County Jail* 10/2/92, at 23–24.

Warden Owens testified that he read all three Special Master's Reports, including the two reports quoted above. *See* Owens Tr. 10:13 to 12:21. Based on this documented history of problems at CCCF with respect to conflicts caused by placing inmates on the floors of cells near toilets,

there are genuine issues of material fact as to whether Owens or McDonnell actually knew of the risks posed to inmates—or whether the problem was sufficiently obvious to warrant intervention. Indeed, this seems to present precisely the "longstanding, pervasive, well–documented [and] expressly noted" history of problems contemplated by *Farmer* that could indicate prison officials had knowledge of a substantial risk of harm to prisoners. *Id.,* 511 U.S. at 842–43, 114 S.Ct. 1970.

Because these Special Masters Reports raise questions of fact as to whether Owens and McDonnell were aware of the problems caused by the toileting conditions, I cannot decide at this time whether either Defendant is entitled to a defense of qualified immunity. Accordingly, I shall deny Defendants' Motion for Summary Judgment on this claim.

## V. CONCLUSION

For the reasons stated above, I shall grant in part and deny in part the Motion for Summary Judgment of Defendants, Warden David S. Owens and Freeholder Edward T. McDonnell, as to the Complaint filed against them by Plaintiffs, Charles Liles and Daron Josephs. The Court shall enter an appropriate form of Order.

## ORDER

This matter having come before the Court on the Motion of Defendants, Warden David S. Owens and Freeholder Edward T. McDonnell, for Summary Judgment, pursuant to Fed.R.Civ.P. 56, Frederick J. Schuck, Esq., County Counsel, and Donna M. Whiteside, Esq., Assistant County Counsel, appearing on behalf of Defendants, and Lawrence S. Lustberg, Esq., and Philip G. Gallagher, Esq., GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, P.C.,

appearing on behalf of Plaintiffs, Daron Josephs and Charles Liles; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 1st day of October, 2002, hereby ORDERED that the Motion for Summary Judgment of Defendants, Warden David S. Owens and Freeholder Edward T. McDonnell, is GRANTED IN PART and DENIED IN PART. Defendants' Motion for Summary Judgment is granted on all of Plaintiffs' claims, with the exception of Plaintiffs' claim relating to violence among inmates caused by toileting conditions.